**UNITED STATES of America**

**v.**

**Frank CARUSO, Salvatore Maneri, Vincent Mauro, John Papalia, Defendants.**

**No. 61–Cr. 527.**

United States District Court
S. D. New York.

Dec. 14, 1967.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, New York City, by Paul B. Galvani, Asst. U. S. Atty., of counsel.

Irving Anolik, New York City, for defendant Vincent Mauro.

## MEMORANDUM

CROAKE, District Judge.

Petitioner Vincent Mauro brings the present motion pursuant to 28 U.S.C.A. § 2255 seeking an order vacating the judgment which convicted him, on his own plea of guilty, of ten counts of violating the Federal Narcotics Laws, 21 U.S.C.A. §§ 173, 174. Mauro was one of twenty defendants named in a thirty count indictment filed on May 22, 1961.[1] After arraignment, Mauro was released on $50,000 bail, but before the trial began he became a fugitive, the bail was forfeited, and a bench warrant was issued for his arrest.

In early 1962, petitioner was apprehended in the Azores and returned to this country. He was subsequently indicted for bail jumping to which charge he pled guilty before Judge Metzner on March 21, 1962.[2] In the meantime, of course, the original narcotics charges were still pending. On March 4, 1963, following the selection of a jury, Mauro pled guilty before the undersigned to ten of the thirty narcotics violations with which he was charged.[3] By his present motion, petitioner seeks to vacate the judgment of conviction that was entered on his plea of guilty. The motion is made pursuant to 28 U.S.C.A. § 2255 which permits a prisoner in federal custody to make one motion, at any time, before the court which imposed sentence, if the prisoner claims "that the sentence was imposed in

1. For the fate of most of the remaining defendants see United States v. Ageuci, 310 F.2d 817, 99 A.L.R.2d 478 (2d Cir. 1962), cert. denied, 372 U.S. 959, 83 S.Ct. 1016, 10 L.Ed.2d 12 (1963).

2. See Appendix, pp. 12, 13, 14.

3. See Appendix, pp. 14, 15, 16.

violation of the laws or constitution of the United States." The essence of petitioner's argument is that because he was unaware at the time he pleaded guilty that he would be ineligible for parole, the guilty plea was involuntary and/or not taken in accordance with Rule 11, Fed.R.Crim.P.

 The primary support for Mauro's claim is Munich v. United States, 337 F.2d 356 (9th Cir. 1964). In *Munich*, as in the present case, the petitioner's allegation that he was not aware that he would not be eligible for parole was supplemented by an affidavit from his attorney to the effect that the attorney had not so informed him. From this the court concluded "that the Government has not sustained its burden of proving that Munich pleaded guilty with understanding of the consequences." 337 F.2d 356 (9th Cir. 1964) at 361.

By its terms, then, the conclusion of the 9th Circuit rests on the proposition that a defendant must plead guilty with an understanding of the consequences. This "understanding of the consequences" standard is a paraphrase of Rule 11, Fed. R.Crim.P., which provides in pertinent part that a court shall not accept a plea of guilty " * * * without first determining that the plea is made voluntarily with understanding of the nature of the charge." To understand the nature of a charge it is of course necessary to understand the worst of those consequences that can be foreseen [4] as of the time the plea is taken. A defendant who has been informed of the maximum punishment to which he is exposed understands the consequences of a plea of guilty. If he is subject to parole, that is a benefit running in his favor. But release on parole is not something to which he has a right and is thus not a forseeable consequence of his plea.

There is of course a counter-argument: In both the parole and the non-parole situations the potential maximum time served is the same and the decision as to what it will be rests with the sentencing judge. But where there is a possibility of parole, unlike the situation where no such possibility exists, the minimum time served is beyond the control of the sentencing judge and a defendant is entitled to take that into consideration. Thus, the argument in favor of viewing eligibility for parole as a "consequence" of a plea of guilty that must be understood before the court accepts the plea may have some validity in the *Munich* situation. There the defendant pled guilty to only one count of the indictment and he could rationally calculate that the amount of time he would actually spend in prison would depend only in part on the sentencing judge and in part on his eligibility for parole. Mauro, on the other hand, pled guilty to ten separate counts on each of which, according to his own statement, he knew the minimum sentence was five years.[5] Mauro could have been sentenced consecutively on each of the ten counts. He was therefore aware that a possible consequence of his plea of guilty was a minimum sentence of fifty years and a maximum of two hundred years.[6] Thus, even assuming, as Mauro alleges he did, that the "usual rules as to eligibility for parole" applied,[7] Mauro could have been given a sentence which would have rendered him ineligible for parole for sixteen and two-thirds years, or one and two-thirds years more than the present term from which he seeks to extricate himself. Although it is not the practice of this court to impose consecutive sentences in such circumstances, this was

---

4. Certain "consequences" of a guilty plea, such as prison treatment, cannot be foreseen and thus cannot be "understood" in the sense in which the 9th circuit presumably used that term. That is, they cannot be weighed when deciding whether or not to plead guilty.

5. Transcript of the March 11, 1963 hearing before the undersigned, p. 46.

6. This does not include his liability to sentence on the separate bail jumping charge to which he had earlier pled guilty.

7. Mauro affidavit, p. 3. See 18 U.S.C.A. § 4202, which makes federal prisoners eligible for parole after serving one-third of their sentence in most instances.

certainly a potential "consequence" of his pleading guilty that Mauro "understood." Certainly at no time did the undersigned, who accepted the plea and imposed sentence, ever indicate what sentence Mauro would receive.

In light of the fact that even if the normal parole rules applied Mauro was potentially subject to more than fifteen years in prison without being eligible for parole, his present claim is in essence a claim that he was given a greater sentence than he thought he would receive. It has been repeatedly held that when the plea of guilty was voluntary, disappointment as to the actual sentence imposed is not a valid ground for § 2255 relief. E. g., United States v. Page, 229 F.2d 91 (2d Cir. 1956); Jackson v. United States, 214 F.2d 485 (4th Cir. 1954), cert. denied, 348 U.S. 900, 75 S.Ct. 222, 99 L.Ed. 707; Verdon v. United States, 296 F.2d 549 (8th Cir. 1961), cert. denied, 370 U.S. 945, 82 S.Ct. 1590, 8 L.Ed. 2d 811.

It is this court's view that *Munich* v. United States, supra, is distinguishable from the present case. But even if it were not, we would be disinclined to follow it. See Verdon v. United States, supra. The petition in *Munich*, as here, is basically to withdraw a plea of guilty. Therefore, the same standards as would be applied to a motion under Rule 32(d), Fed.R.Crim.P., also apply here. In this circuit an allegation of innocence is required to support such a motion. United States v. Norstand Corp., 168 F.2d 481 (2d Cir. 1948).[7-A] No such allegation is contained in Mauro's affidavit and his attorney, speaking on Mauro's behalf at the time of sentencing stated, " * * * nothing that I am saying should suggest that I am representing an innocent man; I am not saying that." [8]

But even assuming, arguendo, both that the 9th Circuit decision is correct and should be followed, and that the present situation is not distinguishable from the one which that court confronted in *Munich*, petitioner is still not entitled to the relief he asks. Mauro's contention is ultimately bottomed on the assertion in his affidavit that "at the time I pleaded guilty * * * I was completely unaware of the fact that since this was a narcotics violation, I was not eligible for parole, suspension of sentence, or probation." [9] Notwithstanding Mauro's sworn affidavit, several things belie his assertion.

At his sentencing on March 11, 1963, Mauro read into the record a statement which concluded as follows:

"So, your Honor, in conclusion may I say I trust in your judgment, so please do not sentence me for my name, reputation or nationality, just for the deed in question, and also take into consideration *I am a first offender and the minimum sentence is five years.*" [10]

We can never be certain exactly what was in Mauro's mind when he stated the minimum sentence was five years. But it seems a fair inference from that statement that Mauro knew he would have to spend at least five years in jail, no matter how lenient the sentencing judge was.

This inference gains support from the alacrity with which Mauro moved this court for a reduction of sentence on the precise ground as to which he now pleads ignorance, viz., that he was not eligible for parole. At no point in all the time that motion was pending was it ever asserted, orally or in the motion papers, that Mauro was ever unaware that he would be ineligible for parole.[11]

Michael P. Direnzo, Esq., Mauro's attorney at the time of his plea, has sub-

---

7-A. Accord, United States v. Lo Duca, 274 F.2d 57 (2d Cir. 1960); United States v. Nagelberg, 323 F.2d 936 (2d Cir. 1963); United States v. Hughes, 325 F.2d 789 (2d Cir. 1964).

8. Transcript of the March 11, 1963 hearing before the undersigned, p. 36.

9. Mauro affidavit, p. 2.

10. Transcript of the March 11, 1963, hearing before the undersigned, p. 46 (emphasis supplied).

11. See the Memorandum in 61 Cr. 527 and 62 Cr. 87, dated May 10, 1963, and the papers in support of that motion.

mitted an affidavit in which Direnzo corroborates Mauro's allegation that Direnzo never informed him that he was not eligible for parole. Direnzo states that although he, "of course, was completely aware that under the plea involving the narcotics count violations, that the Petitioner would be ineligible for parole, frankly, [Direnzo] assumed that the petitioner was aware of this, especially since he had previously served a short sentence in a Federal Penal Institution." [12] Direnzo is a lawyer with many years' experience at the criminal bar. His assumption as to Mauro's awareness of his ineligibility for parole seems well founded in light of Mauro's past record. [13] Indeed, the most striking thing about the Direnzo affidavit is the absence of any statement that his assumption about Mauro's awareness has changed. Beyond that, even if this omission is a mere oversight on Direnzo's part and he has in fact changed his mind, nothing indicates that he has done so on the basis of any evidence stronger than that presently before the court, namely, Mauro's word.

In the last analysis, then, Vincent Mauro is asking this court to take his word that at the time he pled guilty he was unaware that he would be ineligible for parole. But from the time he entered this country illegally in 1931 until the day of his conviction of the offenses for which he is now in prison, Mauro's record has been one of continuous affronts to society. Over the years he has possessed burglar's tools, violated parole, jumped bail, robbed someone, and violated the New York State liquor laws. In 1956 he was convicted of having claimed his deceased grandmother as a dependent when filing his income tax returns. I find that the credibility of Mr. Mauro has worn thin. His affidavit has not changed this court's original conclusion, admittedly shared by his trial counsel, that Mauro knew full well at the time he pled guilty that he would not be eligible for parole.

For all of the foregoing reasons the motion is denied.

## APPENDIX

*Voire dire before Hon. Charles M. Metzner, U.S.D.J., on March 21, 1962.*

THE COURT: Mr. Vincent Mauro.

(Defendant Mauro rose.)

THE COURT: Mr. Mauro, are you represented by counsel in this case?

DEFENDANT MAURO: That's correct.

THE COURT: What is his name?

DEFENDANT MAURO: Mr. Direnzo.

THE COURT: Mr. Direnzo is the gentleman sitting two seats to your right?

DEFENDANT MAURO: That's correct.

THE COURT: I understand you wish to change your plea from not guilty to guilty?

DEFENDANT MANERO: [sic] That's right.

THE COURT: Have you discussed this indictment and the allegations in it with Mr. Direnzo?

DEFENDANT MAURO: I have.

THE COURT: Have you told him all the facts and circumstances known to you concerning this indictment?

DEFENDANT MAURO: Yes, your Honor.

THE COURT: And has your attorney consulted with you as to any possible defenses you might have in this case?

DEFENDANT MAURO: Yes, your Honor.

THE COURT: Has he advised you of the punishment which the law provides in this case is a maximum of five years imprisonment and a possible fine of $5000, or both?

DEFENDANT MAURO: Yes.

---

12. Direnzo affidavit, p. 2.

13. Prior to the charges involved here, Mauro had a record of six convictions for various crimes which appear in the text, infra, at p. 11. (Affidavit of Ass't U. S. Attorney Paul B. Galvani, p. 3.)

THE COURT: And do you realize the court may impose the same sentence upon your plea of guilty as it could impose if a jury had found you guilty after trial?

DEFENDANT MAURO: Yes, your Honor.

THE COURT: You understand the Constitution of the United States guarantees you the right of a trial by jury.

DEFENDANT MAURO: Yes.

THE COURT: Has anyone attempted to influence you or promise you anything in order to change your plea from not guilty to guilty?

DEFENDANT MAURO: No, sir.

THE COURT: Is this application by you to change your plea from not guilty to guilty being done freely and voluntarily and of your own accord?

DEFENDANT MAURO: That's right.

THE COURT: You may sit down, Mr. Mauro.

\* \* \* \* \* \*

*Voire dire before Hon. Thomas F. Croake, U.S.D.J., on March 4, 1963.*

MR. DIRENZO: If your Honor please, on behalf of the defendant Vincent Mauro, he now desires to withdraw his plea of not guilty heretofore entered, and now desires the Court's permission to plead guilty to count 1, count 3, count 4, count 5, count 7, count 14, count 20, count 26, count 27 and count 28 of the indictment.

THE CLERK: You waive the reading of the indictment, counselor?

MR. DIRENZO: We do waive the reading of the indictment.

MR. DALY: Your Honor, I believe there was a mistake. According to my records, the defendant Mauro is not mentioned in count 28, but is mentioned in count 30.

MR. DIRENZO: No, counts 26, 27 and 30.

THE COURT: You did say 28.

MR. DIRENZO: I am sorry.

THE COURT: Mr. Mauro, will you please rise. (Defendant Mauro stood up.)

THE COURT: You have heard what your counsel has stated on your behalf?

DEFENDANT MAURO: I did.

THE COURT: Is that your wish, sir?

DEFENDANT MAURO: That is right.

THE COURT: And you do so voluntarily, knowing that a conviction by a plea of guilty is the same as a conviction by a jury after trial. You understand that you are entitled to a trial of the issues which have been raised by your not guilty plea to the indictment?

DEFENDANT MAURO: Yes.

THE COURT: You know that?

DEFENDANT MAURO: Yes.

THE COURT: And you do so voluntarily?

DEFENDANT MAURO: Yes.

THE COURT: No promises have been made to you by anyone to induce you to make such a plea. Is that right?

DEFENDANT MAURO: That is right.

THE COURT: All right, you may be seated.