Clyde W. **JENKINS**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 101–68.

United States Court of Appeals
Tenth Circuit.

Jan. 2, 1970.

Rehearing Denied Feb. 11, 1970.

Michael J. McCarthy, Boulder, Colo., for appellant.

Lawrence A. McSoud, U. S. Atty. (Robert P. Santee, Asst. U. S. Atty., on the brief), for appellee.

Before FAHY,[*] Senior Circuit Judge, and HILL and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

Appellant Jenkins appeals from the denial of his motion under 28 U.S.C. §

---

[*] Of the District of Columbia Circuit, sitting by designation.

2255 to vacate convictions and sentences entered on pleas of guilty. The pleas were accepted by a former District Judge in 1961 to an indictment charging violations of the federal narcotics laws, 26 U.S.C. §§ 4704(a) and 4705(a), by two purchases and two sales of narcotics. The court imposed two twenty-year and two ten-year sentences which were all made concurrent. Jenkins' contentions center around his claim that the District Judge who accepted the pleas did not properly comply with Rule 11, Federal Rules of Criminal Procedure, by making the necessary inquiries as to whether the pleas were made voluntarily and with understanding of the nature of the charges and consequences of the pleas. The District Judge considering the motion examined the files and records and determined that they showed conclusively that the pleas were properly accepted and denied the motion without an evidentiary hearing. 289 F.Supp. 415.

The facts from the record are these. Jenkins was charged on January 11, 1961, by a four count indictment alleging two purchases and two sales of narcotics in violation of 26 U.S.C. §§ 4704(a) and 4705(a). On January 18 he appeared for arraignment with retained counsel before the former District Judge and entered pleas of not guilty to all counts. On the morning of February 10 Jenkins appeared with his attorney again for trial. A jury was waived and when the case was reached in the afternoon, the following discussion occurred among the court, Jenkins and his counsel:

"The Court: Are you ready to proceed with this plea in the Jenkins case?

"Mr. Hanlon: If the Court please, at this time Mr. Jenkins wishes to withdraw his plea of not guilty and enter a plea of guilty to this charge.

"The Court: Is that your desire, Jenkins?

"Defendant: Yes, sir.

"The Court: How many counts in the indictment?

"Defendant: Four. Two purchases and two sales.

"Mr. Hanlon: Four. Two purchases and two sales.

"The Court: You enter a plea of guilty as to each of the four counts of the indictment?

"Defendant: Yes, sir.

"The Court: I will postpone imposition of sentence until one week from today.

"Mr. Hanlon: At 1:30?

"Defendant: May I have a chance to make a statement before sentence is pronounced?

"The Court: Yes, you will; and counsel also."

On February 17 Jenkins appeared again with his attorney before the court for sentencing. The attorney made a statement [1] and Jenkins was also per-

---

1. The statement by Jenkins' attorney was as follows:

"Mr. Hanlon: If the Court please, this matter Mr. Scott pointed out, this defendant is married, has three children. He has been employed, he is an educated person. I have represented him in the past—in the past year and a half I have known him quite well. All the indications are that he wants to quit, get out of the business of doing burglarizing or selling any narcotics, and go back to a legitimate job; and that's the reason that he came in here and entered his plea of guilty.

"I don't agree with Mr. Rizley that this defendant cannot be rehabilitated; and I don't agree with him that he is like some of the other defendants that have been before you today. He is not an addict. He has never used any type of narcotics. He has held jobs intermittently in the past. He has worked at construction work in Alaska, and as a pipeliner. I believe there is a good chance for his rehabilitation. I think that should be taken into consideration. Also the fact is, as this defendant has indicated to the Court, to Mr. Scott, and to myself, that he wants to get out of the business of being illegal, and go into some legal transaction if the Court would see fit to give him a minimum sentence of some type. He did enter his plea of guilty."

mitted to make a statement in which he admitted his guilt and sought mitigation of punishiment.[2] Jenkins' statement showed that he was aware of the correct minimum and maximum sentences and his expectation of imprisonment.

The order denying the § 2255 motion reviewed in detail Jenkins' contentions and the record of the 1961 proceedings where the guilty pleas were accepted and the record when the sentences were imposed. The order stated that Jenkins made no claim that his pleas were obtained by promises, threats or the like, or that they were involuntary, and that complaint was made only of failure of the court to ask him if the pleas were vountarily made, as required by Rule 11. The court concluded that the record conclusively showed that Jenkins understood the nature of the charges and voluntarily plead guilty; that he knew the consequences of his pleas, having accurately stated the maximum and minimum sentences permitted by law; that the failure to advise about the unavailability of probation or parole in the case of such narcotic sale offenses, of which Jenkins said he was unaware, related only to a matter of legislative grace and not to a consequence of the pleas; and that the assertion that Jenkins' attorney stated he probably would receive the minimum sentence was only an opinion, not affording a ground for a collateral attack on the sentences. The court stated that the record conclusively showed that Jenkins was entitled to no relief and denied the motion without an evidentiary hearing. We turn now to Jenkins' arguments on his appeal from that order.

First, Jenkins makes several contentions under Rule 11 as amended effec-

2. The following discussion occurred among the court, Jenkins and his attorney:

"The Court: Do you desire to make a statement?

"Defendant: Please, Your Honor.

"It is true, I am guilty of what the charge is. That's why I came in here and plead guilty. But I talked it over with my wife first before I did.

"We have got three children. We haven't had too good a home life because I wouldn't tend to business and go get a job like she said. But I have got the education. In the penitentiary, that is where I am going right now,—when I get out of there I can get an engineering degree while I am in there, I can take care of my family in the way they should be taken care of. That is why I came in here and put myself on the mercy of the Court and plead guilty. I am wrong—I have done wrong. I'm not denying that; I don't intend to. I have figured out that there is a minimum of five years on the count to sell or to purchase, which carried five to twenty, and two to ten. I believe I could make myself a good citizen—there are officers in this courtroom, some of the officers that helped make this case, will tell you, I can be rehabilitated, can be made a good citizen, and take care of my family.

"The Court: I recall making a pact with you on one occasion.

"Defendant: Yes, sir.

"The Court: When you were placed on probation.

"Defendant: Yes, sir, I served the probation out.

"The Court: And, of course, needless to say, you have been a great disappointment to me.

"Defendant: I am sorry, but I—I lived the probation out. I ran a car lot for two years with my father's money—my father is here in the courtroom now and my wife is here in the courtroom. They will stand behind me. Of course there are people in here that will vouch for me—business people, people of means, here in town that believe in me. I believe—I know that I won't let you down. I place myself on your mercy—that is why I came in here and plead guilty.

"The Court: It will be the judgment of the Court that you serve a total of twenty years on counts 1 and 2—I believe the counts 1 and 2 carry—

"Mr. Hanlon: 1 and 3 carry two to ten.

"Mr. Rizley: 1 and 3 are the sale counts; 2 and 4 are the purchase counts.

"The Court: Twenty years on count 1; ten years on count 2; twenty years on count 3; and ten years on count 4, the sentence imposed on each count to run concurrently with each other."

tive July 1, 1966, and McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, which interpreted the new rule. Under the amended rule and the *McCarthy* case he argues that the pleas and convictions must be set aside and that he be permitted to plead anew. However, Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16, has disposed of such contentions. The Supreme Court there held that the rule in *McCarthy*—entitling defendants to plead anew where their pleas were accepted without compliance with Rule 11— applies only prospectively or to pleas accepted after April 2, 1969. Jenkins also contends that the terms of Rule 11 as amended in 1966 apply because they only clarified existing law. We cannot agree. The requirements of the new provisions of Rule 11 as they may be construed apply only to pleas entered after the amended rule became effective. See Murray v. United States, 419 F.2d 1076 (10th Cir.). The amended Rule is set out in the margin.[3]

Nevertheless, the question remains whether there was proper compliance with Rule 11 as it existed in 1961 when the pleas were accepted and whether, measured by that standard, the files and records conclusively showed that appellant was entitled to no relief so that his motion was properly denied without an evidentiary hearing. See 28 U.S.C. § 2255. The old Rule 11 provided:

"The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge."

The federal courts have long treated acceptance of a plea of guilty with caution because of its conclusive consequences as a conviction itself and " * * courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009; Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510; and see Boykin v. Alabama, 395 U.S. 238, 242–244, 89 S.Ct. 1709, 23 L.Ed.2d 274. In exercising such caution this Court has stated that "[b]efore accepting a plea of guilty, the court should either advise the defendant, or be certain that the defendant has been advised of the consequences of a plea of guilty." Harper v. United States, 368 F.2d 53, 55 (10th Cir.); Murray v. United States, supra. However, the rule did not require any particular ritual, as the *Murray* opinion recognizes. See also Stephens v. United States, 376 F.2d 23 (10th Cir.), cert. denied, 389 U.S. 881, 88 S.Ct. 124, 19 L.Ed.2d 176; and Nunley v. United States, 294 F.2d 579 (10th Cir.), cert. denied, 368 U.S. 991, 82 S.Ct. 607, 7 L.Ed. 2d 527.

We must weigh the record before the District Court under such interpretations of the old Rule 11 and the practice required in accepting pleas of guilty before its amendment. Jenkins alleged that there was no inquiry whether his plea was voluntary or whether he understood the nature of the charges, setting out parts of the record cited above; that he was not informed by the court of the consequences of the plea, not having been told by the court when the pleas

3. Rule 11, as amended effective July 1, 1966, provides:

"A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

were accepted or when the sentences were imposed that he would be ineligible for probation or parole; that he did not know that on such a narcotics sale conviction he would be ineligible for probation or parole; that his counsel would testify that he did not know and did not advise Jenkins of such ineligibility for probation or parole; that his attorney advised him that if he plead guilty he would probably receive a minimum sentence because this was his first conviction of a federal narcotics violation; and that his pleas were not entered voluntarily. The response filed by the Government set forth at length the record made before the former District Judge at the acceptance of the pleas and at sentencing and argued that the record showed conclusively that the pleas were voluntary and properly accepted.

We conclude that the record as a whole did not permit denial of the motion under § 2255 without an evidentiary hearing. The averments are that Jenkins was not advised by the court or counsel, and did not know, that a conviction for the narcotics sale violations charged would make him ineligible for probation or parole.[4] Such circumstances we deem a practical consequence of the plea which could not be dismissed as irrelevant as a matter of law. The substance of such allegations has been recognized in several cases. See Berry v. United States, 412 F.2d 189 (3d Cir.); Durant v. United States, 410 F.2d 689 (1st Cir.); and Munich v. United States, 337 F.2d 356 (9th Cir.).[5] Elsewhere such circumstances have been viewed as insufficient grounds for post conviction relief. See Trujillo v. United States, 377 F.2d 266 (5th Cir.), cert. denied, 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221; Smith v. United States, 116 U.S.App. D.C. 404, 324 F.2d 436, cert. denied, 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975; and Simon v. United States, 269 F.Supp. 738 (E.D.La.). The practical effect of the loss of probation and parole is " * * so powerful that it translates the term imposed by the sentencing judge into a mandate of actual imprisonment for a period of time three times as long as that ordinarily expected." Berry v. United States, supra, 412 F.2d at 192.[6] We conclude that such an effect is, within the meaning of the rule, a consequence of the plea to be carefully considered.

The record of the discussions among the court, counsel and Jenkins has been set out, Jenkins replied to inquiries to him that the plea was his desire and that two purchases and two sales were

4. See 26 U.S.C. § 7237(d) (1).

5. We note that the Ninth Circuit later declined to apply the *Munich* case retroactively. See Fong v. United States, 411 F.2d 1181. However, we do not feel it is a new rule to recognize ineligibility for probation or parole as a material consequence of a plea, but a reasonable application of existing interpretations of Rule 11 to the earlier plea. See Berry v. United States, supra. This Court has cited the *Munich* case in discussing the importance of ascertaining that the defendant understands the consequences of the plea. See Harper v. United States, supra, 368 F.2d at 56.

6. Ordinarily a federal prisoner may be released on parole after serving one-third of his sentence. 18 U.S.C. § 4202. However, prisoners convicted of trafficking in narcotics receive drastically different treatment under 26 U.S.C. § 7237(d). Those convicted of violating provisions aimed at importers and sellers of narcotics (21 U.S.C. §§ 174, 176b, 184a; 26 U.S.C. § 7237(b)) are ineligible for a suspended sentence, probation or parole, although apparently still eligible for good time allowances against their sentence. 42 U.S.C. § 259; 18 U.S.C. § 4161.

The severity of the congressional policy in dealing with narcotics law violators is suggested by a comparison with some other similar penalties. Under 18 U.S.C. §§ 2113(e) and 2114, bank robbery in combination with murder or kidnapping and mail robbery accomplished by wounding or jeopardizing the life of a government employee require minimum sentences of ten and twenty-five years, respectively, without provision for parole in the sentence, although probation or a suspended sentence is allowable. See, e. g., United States v. Cameron, 351 F.2d 448, 449 (7th Cir. 1965); and United States v. Hardaway, 350 F.2d 1021, 1022 (6th Cir. 1965).

involved. While no particular ritual was required, without more we cannot say that the making of these particular pleas was sufficiently probed and that there was proper understanding of the especially heavy consequences of the pleas in this case. In the face of the allegations made and this record,[7] we cannot say as a matter of law that Rule 11 " * * * was complied with and that the appellant's plea was made voluntarily with understanding of the nature of the charge and the consequences of the plea." Murray v. United States, supra, at 1077.

Despite the District Court's careful review of the files and record we cannot agree that they showed conclusively that appellant was entitled to no relief so that his motion could be denied without an evidentiary hearing. Accordingly the judgment is vacated and the case is remanded for further proceedings.

---

7. Appellant contends that the record at sentencing may not be considered because the rule deals only with the procedure and the defendant's voluntariness and understanding at the time that the plea was accepted. The question of compliance with Rule 11 does relate to the record and circumstances at that time and we focus on that record for what it may conclusively show on that question. See, e. g., Murray, v. United States, supra. However, we express no opinion as to the relevance or admissibility of the sentencing record on that question at the evidentiary hearing since those evidence matters are for the trial court to consider under the facts developed at the hearing.