Oaks, Circuit Judge, dissented and filed opinion.

**Mordaqueo Moises KORENFELD,**
**Defendant-Appellant,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**Nos. 161–162, Dockets 35413, 71–1328.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 30, 1971.

Decided Nov. 22, 1971.

---

9. Abbott Lab. v. Gravis, 470 S.W.2d 639, 642 (Tex.1971).

10. See Bennett v. Comm'r of Internal Revenue, 113 F.2d 837, 839–840 (5th Cir. 1940).

Thomas McGanney, New York City, for defendant-appellant.

Mervyn Hamburg, Dept. of Justice, Washington, D. C. (Edward R. Neaher, U. S. Atty., E. D. of N. Y. and Sidney M. Glazer, Washington, D. C., on the brief), for appellee.

Before LUMBARD, MANSFIELD and OAKES, Circuit Judges.

LUMBARD, Circuit Judge:

Mordaqueo Moises Korenfeld pleaded guilty on June 1, 1970, before Chief Judge Mishler of the Eastern District of New York to the charge of conspiracy to import and sell cocaine in violation of 21 U.S.C. §§ 173–174 and was sentenced to a term of imprisonment for 12 years and a $20,000 fine. After judgment was entered Korenfeld moved *pro se* to vacate the sentence pursuant to 28 U.S.C. § 2255 or, alternatively, to reduce his sentence pursuant to Rule 35, F.R.Crim.P. Judge Mishler held a hearing on each of Korenfeld's claims and denied the motions. We affirm.

Korenfeld was indicted in the Eastern District of New York on April 18, 1970, and charged with being a member of an eleven-man cocaine smuggling ring which operated for four months in the spring of 1969 in violation of 21 U.S.C. §§ 173–174.[1] At his arraignment on June 1, 1970, Korenfeld, who spoke English poorly, was represented by appointed counsel. An interpreter was also present. Korenfeld moved through counsel to enter a plea of guilty to one count of the three-count indictment. Judge Mishler made an extended inquiry into the voluntariness of the plea including an explanation of the range of punishment to which Korenfeld would be subject. However, the judge did not tell Korenfeld that, under 26 U.S.C. § 7237(d), he would be ineligible for parole. When the defendant indicated that he still wished to plead guilty, the court accepted the plea and deferred sentence. Prior to imposing sentence on August 28, 1970, Judge Mishler asked whether Korenfeld was willing to explain his involvement in the crime, indicating that he had determined that the length of Korenfeld's sentence would depend on whether he was the "chief" of the conspiracy or "[i]f he had a lesser position." Through the interpreter, the defendant extensively described his participation in the conspiracy. Judge Mishler also inquired whether the defendant had cooperated with the government and given new information about the narcotics operation. Korenfeld and the Assistant United States Attorney both explained that Korenfeld had spoken with the government at some length. After receiving this information, Judge Mishler concluded that the defendant's cooperation had been of little use to the government and, as the defendant's attorney conceded that it had not led to the prosecution or conviction of anyone, sentenced Korenfeld to 12 years imprisonment and a $20,000 fine.

---

1. Since repealed. P.L. 91–513, Title III, § 1101(b) (4) (A), 84 Stat. 1292 (Oct. 27, 1970), effective May 1, 1971, but applicable only to future prosecutions. P.L. 91–513, Title III, § 1103.

Five days later, alleging that his plea had been tendered only on the assurance of counsel that he would receive a five year sentence, Korenfeld moved *pro se* to vacate the plea on the ground that it was not voluntary. Judge Mishler held a hearing on Korenfeld's claim, found that no such promise had been made, and dismissed the motion. Korenfeld also asked the court to reconsider the sentence in light of the cooperation that he had given the government. The judge reiterated that he felt that Korenfeld's claim of cooperation had been overstated and he refused to reduce the sentence.

Thereafter Korenfeld filed a second motion to vacate the plea claiming that its entry had been induced by fraud of counsel. Again the court held a hearing at which Judge Mishler himself raised for the first time the question whether his failure to inform Korenfeld of the latter's ineligibility for parole had affected the voluntariness of the plea. Korenfeld testified that he had never heard of the term "parole" until after he had entered the plea. His attorney also testified that he had not discussed ineligibility for parole with the defendant. The Assistant United States Attorney thought that he might have discussed parole sometime during the negotiations leading to the plea.

Judge Mishler again denied Korenfeld's motion. He agreed that lack of eligibility for parole was a consequence of a plea of guilty about which a defendant ought to be informed pursuant to Rule 11, F.R.Crim.P, but found that Korenfeld not only was unaware of the unavailability of parole at the time the plea was entered, but also was unfamiliar with the entire concept of parole, believing that he would be required to spend in prison the full length of the term. Consequently, Judge Mishler felt that the lack of knowledge about the unavailability of parole had not affected the defendant's decision in any way and thus

the plea was still valid under F.R.Crim. P. 11.

Korenfeld's argument in this court is simply stated: Pursuant to the Supreme Court's decision in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), a defendant who pleads guilty after April 2, 1969, and is not informed of the consequences of his plea in conformity with Rule 11, F.R. Crim.P., must be given a chance to plead anew. We have held, in Bye v. United States, 2d Cir., 435 F.2d 177, decided October 14, 1970, that ineligibility for probation and parole is a "consequence" of a defendant's plea within the meaning of Rule 11. Korenfeld, who pleaded guilty on June 1, 1970, was not informed of his ineligibility for parole or probation. Therefore, his plea of guilty was invalid and he ought to be allowed to plead again.

 Our resolution of Korenfeld's claim obviously turns on whether our holding in *Bye* is to be applied retroactively to pleas of guilty taken prior to October 14, 1970. In United States v. Welton, 439 F.2d 824 (2d Cir. 1971), we considered the retroactive effect of *Bye*. Welton had pleaded guilty on February 7, 1967 without being informed that he was ineligible for parole. In 1970, he claimed that this defect in the taking of the plea violated *McCarthy* and *Bye* and required that the plea be vacated and he be allowed to plead anew. Rejecting this claim, we said, "[W]e see no reason to vacate judgments of conviction entered on or before the date of the *Bye* decision upon pleas of guilty unless the defendant can show both that he was unaware of his ineligibility for parole and that he would not have pleaded guilty had he known this." 439 F.2d at 826. Thus *Welton* held that for pleas accepted prior to *Bye*, the defendant would have to show that but for the failure to inform him of his ineligibility for parole, he would not have pleaded guilty.[2] As

2. Accord, Fong v. United States, 411 F.2d 1181 (9th Cir. 1969), cert. denied 396 U.S. 968, 90 S.Ct. 450, 24 L.Ed.2d 434

(holding that its earlier decision of Munich v. United States, 9th Cir., 337 F.2d 356 (1964), which held that failure to

Judge Mishler found that failure to advise Korenfeld of his ineligibility for parole had no effect on Korenfeld's plea, he properly denied Korenfeld's petition. Korenfeld argues, however, that the court's holding in *Welton* does not control this case for he pleaded guilty after April 2, 1969, the date of the *McCarthy* decision while Welton pleaded guilty prior to the decision in *McCarthy*. Thus we are faced with the question whether *Bye* should be held retroactive to the date of the *McCarthy* decision. We hold that it should not.

In *McCarthy*, the Court had before it the question whether Rule 11, F.R.Crim. P., required that a judge personally ascertain that the defendant had made the plea "voluntarily with understanding of the nature of the charge and the consequences of the plea" or whether the judge might rely on the representations of counsel that the defendant was pleading voluntarily and with full knowledge of the consequences of his decision. The Court held that the judge himself must personally address the defendant and if this were not done the defendant was entitled to plead anew without inquiring into the voluntariness of the plea. Nowhere in its opinion did the court indicate the precise content necessary to a Rule 11 inquiry. *McCarthy* was a decision dealing solely with procedure.

Later in the same term, the Court held, in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1708, 23 L.Ed.2d 274 (1969), that, since in entering a guilty plea, a defendant is waiving his Fifth Amendment right against self-incrimination, Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, his right to trial by jury, Duncan v. Louisiana, 391 U.S. 145, 194, 88 S.Ct. 1444, 20 L.Ed.2d 491, 522, and his right to confront his accusers, Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923, a proper waiver requires that a trial judge "canva[ss] the matter with the accused to make sure he has a

full understanding of what the plea connotes and of its consequence." 395 U.S. at 244, 89 S.Ct. at 1712. If it does not appear in the record that the plea was voluntarily and intelligently made, the conviction must be reversed and the defendant allowed to plead anew. The court in no way intimated the precise terms of the inquiry that the trial judge should make of a defendant before accepting his plea.

Thus, until the time when *Bye* was decided, October 14, 1970, there was no guidance from the Supreme Court on whether a trial judge had to advise a defendant, pleading guilty to charges under certain statutes, of his ineligibility for parole before accepting a guilty plea to such charges. Prior to *Bye*, most district judges in this circuit did not inform a defendant of his ineligibility for parole, relying on the fact that "every minimally competent attorney * * * [knew] this, and it [was] his professional duty so to inform his client in advising him to plead guilty." United States v. Welton, *supra*, 439 F.2d at 826. The only reported Second Circuit case to pass on this point was United States v. Caruso, 280 F.Supp. 371 (S.D.N.Y.1967), aff'd sub nom. United States v. Mauro, 399 F. 2d 158 (2d Cir. 1968), cert. denied 394 U.S. 904, 89 S.Ct. 1010, 22 L.Ed.2d 215 (1969). In *Caruso*, Judge Croake indicated that ineligibility for parole was not a "consequence" of which a defendant needed to be informed under Rule 11. Therefore before the *Bye* decision there was no reason for district judges in this circuit to think that a defendant who wished to plead guilty had to be informed that he would be ineligible for parole.

We are of the view that, as *Bye* construed Rule 11, its retroactivity should be governed by the same standards that the Supreme Court applied in Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), when it held that *McCarthy*, which also construed Rule 11,

inform a defendant of his ineligibility for parole would require vacation of his plea, would not be applied retroactively).

But see Jenkins v. United States, 420 F.2d 433, 437 (10th Cir. 1970).

was not to be applied retroactively. In *Halliday*, the court said, "[I]t is appropriate to analyze the question of [McCarthy's] retroactivity in terms of the same criteria we have employed to determine whether constitutionally grounded decisions that depart from precedent should be applied retroactively." 394 U. S. at 832, 89 S.Ct. at 1499. These criteria the Court listed as "(1) the purpose of the new rule; (2) the extent of reliance upon the old rule; and (3) the effect retroactive application would have upon the administration of justice." *Id.*

■ The purpose of the *Bye* rule is to provide additional insurance that a defendant makes an informed decision about the consequences of his tendering a plea, so that in entering the plea he does not underestimate the likely time that he may have to serve in prison. 435 F.2d at 180. Increased knowledge about the consequences of a plea enhances the likelihood that the plea will be "voluntary and knowing," Johnson v. Zerbst, 304 U.S. 458, 466, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). But the mere fact that some defendants have pleaded guilty without knowing that they were ineligible for parole does not mean that they have done so involuntarily. If a defendant does feel that the absence of a warning that he was ineligible for parole made his plea involuntary, he may file a petition under 28 U.S.C. § 2255, as did Korenfeld. The failure of the court to inform a defendant of his ineligibility for parole will only rarely affect the voluntariness of the plea of guilty. United States v. Welton, 439 F.2d at 826. In addition, weight must be given to the prior practice of many district judges of not advising a defendant as to his ineligibility for parole as well as the impact of retroactivity upon the administration of justice. Halliday v. United States, 394 U. S. at 833, 89 S.Ct. 1498; Stovall v. Denno, 388 U.S. 293, 298, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The practice of not informing a defendant that he would be ineligible for parole was thought to be valid in this circuit prior to our decision in *Bye*. Since, in most cases in which a defendant was ineligible for parole, district judges may well have been applying Rule 11 inconsistently with our later decision in *Bye* and since, in most cases, convictions obtained without informing a defendant of his eligibility probably did not violate constitutionally protected voluntariness standards, we decline to hold retroactive to the date of the *McCarthy* decision or at all the holding of *Bye* that a defendant in narcotics cases be advised under Rule 11 of his ineligibility for parole.

The Federal Rules of Criminal Procedure are designed to operate prospectively. One of the advantages of making procedural changes by the rulemaking power is that such changes can be made prospectively and without upsetting prior justified reliance on old judicial practices. Long before new rules become effective they are circulated throughout the legal community and judges and attorneys become aware that from a certain date in the future they will have to modify their practices. For example the original Federal Rules of Criminal Procedure were first distributed to the bar and the public in May, 1943, and did not become effective until March 21, 1946. Similar time allowances have alerted the bench and the bar to the rule amendments and additions made subsequently in 1949, 1956, 1966, 1968 and 1971. It would be altogether contrary to the spirit of the rules if rules, or the interpretation of the rules by the courts, were held to be retrospectively applicable to cases which had been disposed of when different practices were accepted.

■ A defendant who has pleaded guilty prior to the date of our decision in *Bye* and who wishes to attack his conviction on the ground that it was involuntary, will have to meet the usual voluntariness standards prevalent at that time.[3] See Machibroda v. United States,

---

3. But see Harris v. United States, 426 F.2d 99, 101 (6th Cir. 1970) (holding that ineligibility for parole is a consequence of a guilty plea and suggesting in

368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 120, 76 S.Ct. 223, 100 L.Ed. 126 (1956); Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942); Walker v. Johnston, 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.Ed. 830 (1941); Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). If he can show both that he was not advised of his ineligibility for parole and, that, but for his failure, he would not have pleaded guilty, he will have sustained his burden of proving that the plea was not given "voluntarily after proper advice and with full understanding of the consequence." Kercheval v. United States, 274 U.S. at 223, 47 S.Ct. at 583. Bare allegations will not suffice to require an evidentiary hearing. "As a minimum, before proceeding to hold a hearing on such a claim, the district court should require that the defendant submit an affidavit of his attorney in support of his claim or his own affidavit giving a satisfactory explanation of why he cannot submit an affidavit from his attorney. [citation omitted] In any event, the petitioner must categorically waive his privilege regarding any advice he received or any conversation or communication he may have had with any attorney on the subject of pleading guilty, the consequences thereof and the reasons for his entering the plea." United States v. Welton, *supra*, 439 F.2d at 826. In the instant case, Korenfeld has already had a hearing at which Judge Mishler determined that the failure to warn Korenfeld that he would be ineligible for parole had had no bearing on his decision to plead guilty.

We have examined Korenfeld's other claims and find them without merit.

Affirmed.

OAKES, Circuit Judge (dissenting):

One would be very tempted to follow the siren's call of *Bye* prospectiveness in the interests of sound administration—

dicta that for failure to inform a defendant of such ineligibility will require vacation of all guilty pleas taken after April

especially when the song has such felicitous phrasing as does the majority opinion here—were it not for the fact that the record we have before us demonstrates the acumen of McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166 (1969), and what is often called its *per se* rule.

In the hearing on appellant's second *pro se* motion, before Chief Judge Mishler, the United States Attorney testified that he was "virtually certain" that Korenfeld "was well aware of" the possibility of probation and parole under 18 U.S.C. § 371, the general conspiracy statute to a charge of which Korenfeld was apparently desirous of pleading. Yet the trial court found that Korenfeld was ignorant of the entire concept of parole on the basis of Korenfeld's own testimony that he knew of the mandatory five year sentence and expected to receive it but had "never heard of the concept of parole" until after he had entered a plea. Rather, the court found that Korenfeld "believed that the time or the term of sentence was the term he would be required to serve," and held that his plea was knowingly and voluntarily made within the spirit, so to speak, of Bye v. United States, 435 F.2d 177 (2d Cir. 1970). At no point, however, is it explained how Korenfeld could have been aware of the possibility of probation and parole under 18 U.S.C. § 371, as the United States Attorney testified he was, but unaware of the concept of parole at all with reference to 21 U.S.C. § 174.

One explanation for Korenfeld's understanding or lack of it may lie in his ignorance of the English language, since it appears that he is an Argentine national who cannot speak, write, read or understand English. At the time of entering his plea, he apparently talked in "the poor Yiddish that I know" with his lawyer "who didn't speak Yiddish too well, as well," and conversed with the court through a Spanish interpreter who, according to Korenfeld, "didn't speak much

2, 1969, the date of the *McCarthy* decision).

Spanish." At one point in the second hearing below Korenfeld indicated, in direct conflict with his subsequent testimony above referred to, that he understood he could not get paroled on the § 174 count but could be paroled on a § 371 charge; he claimed he thought, however, that he was going to get a five year sentence under the § 174 count on which he had actually been charged. (The court had held at a previous hearing that Korenfeld had understood that his sentence might be not less than five and up to 20 years, and reviewed and reaffirmed that determination at the second hearing below.)

This case thus comes to us on a confused record, with the appellant's own testimony on the subject of his knowledge of parole in conflict, and with the United States Attorney's testimony on Korenfeld's knowledge disregarded in the findings below. It was just such an evidentiary hearing as was held below that was rejected by eight members of the United States Supreme Court in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166 (1969), as an improper procedure for handling Rule 11 proceedings. Said the Court:

> Rule 11 is designed to eliminate any need to resort to a later fact-finding proceeding 'in this highly subjective area.' Heiden v. United States [9 Cir., supra], 353 F.2d 53, at 55. The Rule 'contemplates that disputes as to the understanding of the defendant and the voluntariness of his action are to

be eliminated at the outset * * *.' Ibid. As the Court of Appeals for the Sixth Circuit explained in discussing what it termed the 'persuasive rationale' of Heiden: 'When the ascertainment is subsequently made, greater uncertainty is bound to exist since in the resolution of disputed contentions problems of credibility and of reliability of memory cannot be avoided * * *.' Waddy v. Heer, 383 F.2d 789, 794 ([6 Cir.] 1967). There is no adequate substitute for demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him. 394 U.S. at 469–470, 89 S.Ct. at 1172 (emphasis original).

From that clear language and the *Halliday* case [1] I understand the teaching of *McCarthy* to be that after April 2, 1969, the Rule 11 proceedings must in and of themselves show the defendant to have been fully aware of the consequences of his plea; put another way, noncompliance with Rule 11 requires automatic vacation of a guilty plea.

Concededly here the Rule 11 proceedings do not show that Korenfeld was aware that his sentence under 21 U.S.C. § 174 carried with it the consequence of ineligibility for parole. This consequence is one which five circuits had decided is sufficiently material to require that a defendant be informed of it prior to the entry of the plea below.[2] Two circuits had previously held otherwise.[3] While

1. One month after it was decided, *McCarthy* was held prospective only by Halliday v. United States, 394 U.S. 831, 833, 89 S.Ct. 1498, 1499 (1969), where the Court said: "We hold that only those defendants whose guilty pleas were accepted after April 2, 1969, are entitled to plead anew if their pleas were accepted without full compliance with Rule 11."

2. Harris v. United States, 426 F.2d 99 (6th Cir. 1970); Jenkins v. United States, 420 F.2d 433 (10th Cir. 1970); Berry v. United States, 412 F.2d 189 (3rd Cir. 1969); Durant v. United States, 410 F.2d 689 (1st Cir. 1969); Munich v. United States, 337 F.2d 356 (9th Cir.

1964). In fairness *Harris* and possibly *Jenkins* might not have been available in printed form prior to the arraignment below.

3. Trujillo v. United States, 377 F.2d 266 (5th Cir.), cert. denied, 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967); Smith v. United States, 116 U.S.App.D.C. 404, 324 F.2d 436 (1963), cert. denied, 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975 (1964). *Trujillo* was strictly limited to its facts, as pointed out in *Bye, supra,* 435 F.2d at 179 n. 4, by Sanchez v. United States, 417 F.2d 494, 496 (5th Cir. 1969), and Spradley v. United States, 421 F.2d 1043 (5th Cir. 1970).

the question had been open under United States ex rel. Brooks v. McMann, 408 F.2d 823, 825 n. 1 (2d Cir. 1969), this court shortly thereafter followed the majority of circuits in Bye v. United States, 435 F.2d 177 (2d Cir. 1970). *Bye* may have been a while in coming, but it surely could not have come as any great surprise; as the Tenth Circuit said in Jenkins v. United States, "[w]e do not feel it is a new rule to recognize ineligibility for probation or parole as a material consequence of a plea, but a reasonable application of existing interpretations of Rule 11 to the earlier plea." 420 F.2d at 437 n. 5.

It is true that United States v. Welton, 439 F.2d 824 (2d Cir. 1971), and Serrano v. United States, 442 F.2d 923 (2d Cir. 1971), declined to apply *Bye* retroactively, but in those cases guilty pleas were entered prior to the date of *McCarthy*.[4] Furthermore, the two reasons given in *Welton* for not applying *Bye* retroactively to pre-*McCarthy* pleas (see 439 F.2d at 826) would not seem applicable here, in that (1) Korenfeld's attorney admittedly did not discuss parole with him, and (2) after *McCarthy* the question of actual prejudice is irrelevant. The majority's points made today as to why *Bye* should not be applied retroactively would be more persuasive to me were it not for the lesson of *McCarthy*, *viz.*, that just such a hearing as was held below (with consequent uncertainty as to what was really the defendant's understanding, as this record discloses) is to be avoided after April 2, 1969.

Beyond that, while the Federal Rules of Criminal Procedure may be "designed to operate prospectively" in the majority's authoritative language, I am not aware of any general proposition that "the interpretation of the rules by the courts" is to be given only prospective effect "when different practices were accepted." I believe that the preferable course to follow in determining whether

a given interpretation of a plain-speaking rule should be applied only prospectively would be to seek, in the words of Rule 2, Fed.R.Crim.P., "the just determination of every criminal proceeding * * * simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." On this basis, the wisdom of *McCarthy* in pointing out "the difficulty of achieving [Rule 11's] purposes through a post-conviction voluntariness hearing" (394 U.S. at 470, 89 S.Ct. at 1173) is evident, not only in the abstract, but especially on the face of the record before us. As the Sixth Circuit indicated it would do in Harris v. United States, 426 F.2d 99, 101 (6th Cir. 1970), when confronted with a post-*McCarthy* plea—one made after April 2, 1969—I would reverse and remand, directing that the plea be vacated. Accordingly I dissent.

---

4. Fong v. United States, 411 F.2d 1181 (9th Cir.), cert. denied, 396 U.S. 968, 90 S.Ct. 450 (1969), which refused to apply Munich v. United States, note 2 *supra*, retroactively, also involved a pre-*McCarthy* plea.