**David McCHESNEY, Petitioner-Appellee,**

v.

**C. Murray HENDERSON, Warden, Louisiana State Penitentiary, Respondent-Appellant.**

**No. 72-3743.**

United States Court of Appeals,
Fifth Circuit.

July 26, 1973.

**1102**

John M. Mamoulides, Dist. Atty., Parish of Jefferson, Ernest E. Barrow, II, Gretna, La., for respondent-appellant.

James O. Manning, New Orleans, La., (court appointed) for petitioner-appellee.

Before AINSWORTH, GODBOLD and INGRAHAM, Circuit Judges.

AINSWORTH, Circuit Judge:

David McChesney seeks a writ of habeas corpus from a conviction on his plea of guilty in a Louisiana state court to a charge of armed robbery. He contends that the writ should be granted because he was not fully advised at the time of his guilty plea by counsel or the court that he was effectively waiving his constitutional rights under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and also because he was not advised that the effect of his plea would be confinement for the entire period of his sentence without parole.[1]

He has exhausted state remedies, having been accorded a full evidentiary hearing by the Louisiana state district court which denied his petition for habeas corpus. Certiorari was also denied by the Louisiana Supreme Court (260 La. 1196, 258 So.2d 550 (1972)).[2]

The federal district judge below found, on the basis of the record made when McChesney's guilty plea was accepted in state court, that "[h]e was not advised of his right not to incriminate himself, his right to confront his accusers, his right to trial by jury, the maximum sentence that could be imposed, or any other of his constitutional rights," and thus the record did not satisfy Boykin standards. The district judge further held that under Boykin only the record of the proceeding at the time the plea is accepted may be considered in determining whether the defendant understands the significance of the plea and is entering it knowingly and voluntarily. The district court accordingly declined to give consideration to the evidence taken at the state post-conviction hearing on the issue of whether McChesney was fully informed of his constitutional rights and entered a guilty plea as a voluntary and intelligent choice. The court ordered that the writ be granted unless the state, within thirty days, granted defendant the right to replead to the charge.

McChesney's plea of guilty to the offense of armed robbery was entered in open court on September 10, 1970, by his appointed counsel, Mr. George Stringer, Jr. The defendant, McChesney, was asked at that time by the court whether he understood the plea made in his behalf by his attorney to the effect that he was pleading guilty to armed robbery. His answer was in the affirmative as also was his answer to the court's subsequent question did he appreciate that as a result of the consequences of this plea he would be subject to be sentenced to the state penitentiary at hard labor. The court asked if he still wished a plea of guilty to be entered in his behalf and again the answer was in the affirmative. He was then sentenced to a term of six years at hard labor in the Louisiana state penitentiary.[3]

---

1. The applicable Louisiana criminal statute, LSA–R.S. 14:64(B), reads in part as follows:

   "Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence."

2. The Louisiana Supreme Court's present position on the requirements of Boykin is set forth in detail in this decision, sub nom. State ex rel. LeBlanc v. Henderson, 261 La. 315, 259 So.2d 557.

3. The entire colloquy between the court, the assistant district attorney, defense counsel and the defendant at the time of the

In the state habeas proceeding defense attorney Stringer testified that he had advised McChesney what sentence he would receive with a plea and what sentence he could expect if he were convicted. He told the defendant that he had reviewed the matter with the district attorney and discussed the type of plea that would be acceptable to the state and the length of sentence that would be imposed. He explained to him that he would have to be tried by a jury, that it would be necessary that the jury find him guilty, and that he would be allowed to present what evidence he had to the jury. The statute under which he was charged was reviewed by counsel with the defendant. Mr. Stringer explained to the defendant what evidence the district attorney had or intended to produce, which included an eyewitness as well as the arresting officers. He went over the time sequence of the commission of the crime and the evidence found when McChesney (along with another defendant not involved here) was apprehended. He also reviewed the possible defense of the case with the defendant and made a recommendation though he did not tell him to plead guilty, leaving that choice to the defendant. The accused was told that he would have to decide whether he wanted to be tried by a jury or whether he wanted to enter a plea. The defendant therefore indicated to his attorney that he wanted to enter a plea of guilty. Mr. Stringer lacked specific recollection whether he had informed McChesney that he would not be eligible for parole, but he felt certain that he had so informed him because counsel had bargained unsuccessfully with the district attorney to get a plea to a lesser offense so that McChesney might be eligible for parole.[4]

entry of the plea on September 10, 1970, follows:

MR. NEYREY [The Assistant District Attorney]:

Charles Wooten and David Charles McChesney.

THE COURT:

Mr. Stringer, identify yourself for the Record.

MR. STRINGER:

George Stringer, 6222 Jefferson Highway, Attorney representing Wooten and McChesney.

At this time, we'd like to withdraw our former plea of not guilty and enter a plea of guilty as charged.

THE COURT:

Which one is McChesney?

MR. McCHESNEY:

I am, Your Honor.

THE COURT:

You understand the plea entered on your behalf by your Attorney, Mr. Stringer, to the effect that you plead guilty to armed robbery; do you understand that fully?

MR. McCHESNEY:

Yes, Your Honor.

THE COURT:

Do you appreciate that as a result of the consequences of this plea you're subject to be sentenced to the State Penitentiary at hard labor; do you understand that fully?

MR. McCHESNEY:

Yes, Your Honor.

THE COURT:

Being advised of this, do you still wish the plea of guilty to be entered on your behalf?

MR. McCHESNEY:

Yes, sir.

THE COURT:

What is the date of your birth?

MR. McCHESNEY:

8/6/'44.

THE COURT:

You are entitled to delays under the Law between the time of your plea today and sentence. Do you wish to avail yourself of these delays, are you willing to waive the delays and be sentenced immediately?

MR. McCHESNEY:

I'd like to waive the delays, sir.

THE COURT:

Court is going to sentence you to serve a term of six years at hard labor in the State Penitentiary.

MR. STRINGER:

Your Honor—

THE COURT:

—And, you will receive credit for the time that you've been in the Parish Prison.

4. Reproduced herewith are several excerpts from Mr. Stringer's testimony relative to his conversations with defendant McChesney prior to entry of the plea of guilty.

Q. What preliminary steps did you take in his defense, Mr. Stringer?

A. I visited him at Parish Prison on a number of occasions, spoke to him about the case, obtained the facts from him on the case, and went out and checked some of the . . . spoke to some . . . attempted to speak to some of the witnesses that he said were involved in the case. After I had conducted this, I spoke to the District Attorney's Office on a few occasions. And then came back and visited with him, explained to him how I felt about the case and what I . . . the talks with the District Attorney. And also, before the time we went to trial I also explained to him what the . . . what sentence he would receive with a plea and what sentence, of course, he could expect if he were convicted.

Q. After you reviewed the matter, what was your opinion . . . I mean, was your opinion that he should go to trial or take a plea?

A. My recommendation to him was that he go ahead and take a plea. But, as I had told him at the time, that the decision was up to him as to what he wanted to do.

Q. While you were telling him about this, did you at anytime advise him of his rights that he might have of a right to a trial by jury or any other type of right?

A. Oh, of course. I told him a jury would be the one that would decide from the facts as well as the law.

Q. What else did you advise him of? You said you advised him of the amount of time, the amount of time he might get by trial and the amount of time he might get by a plea?

A. The amount of time if he were convicted by a jury. The amount of time that he would probably get then, as against the amount of time that he would get if he entered a plea, because I had already discussed this with the District Attorney.

Q. And you explained this to him completely?

A. I did, on more than one occasion.

Q. And what was his response to your suggestion?

A. Preliminary, I think, he said he wanted time to think about it. And I came back, after speaking to him about it initially, I came back to him and finally got his response that he wanted to go ahead and enter a plea of guilty and accept the sentence as I recall, just offhand, of six years.

Q. And he decided this after you had told him all the facts about what could happen and what he had a right to?

A. Yes.

\*　\*　\*　\*　\*

Q. Now if I understood your testimony correctly, Mr. Stringer, you said that after you talked to McChesney after you had made your investigation, after you had attempted to speak to witnesses, and, I believe, you said after you consulted with the prosecuting official, then you explained to him what might happen if he went to trial and what would happen if he pled guilty. Is that correct?

A. Yes.

\*　\*　\*　\*　\*

Q. Could you tell the Court, as near as you can remember, exactly what you told him?

A. As near as I can remember, I told him that I had attempted to locate the witnesses that they told me existed that could testify in their behalf at the trial, that I had been unable to locate them, they were unknown at the addresses they had given me. I have no other address for them. I explained to them what evidence the District Attorney had or what they intended to produce in line of witnesses, as I recall, including an eye-witness as well as the arresting officers. We went over the time sequence of the commission of the crime and the time when they were apprehended, the evidence that was found when they were apprehended. We discussed all these things. And they had explained previously to me what their defense was and we reviewed that in line with what the jury might take into consideration, listening to both evidence and the defense that they wanted to present. And as I say, based on all of this, I made a recommendation. They asked me what I thought about the case and I told them.

\*　\*　\*　\*　\*

Q. At the time you talked to these people, had you talked with the prosecuting attorneys or with anyone to get an inclining of how much time they would get if they pled?

A. Now, you mean at the time that I told them that if they pled guilty, what they would get?

Q. Yes?

A. Well, at that time, of course, I had reviewed with the District Attorney and we had also discussed it with the judge as to what type of plea would be acceptable to the State and what type of time we were talking about.

Q. Now this first time when you talked to them about the type of case that the State had and whether you told them or not, they at least understood that they might come out better if they tendered a plea of guilty. At that time did you, in your recommendation, indicate to them that if they went to trial they may get more time than that?

In his testimony at the state habeas proceeding, McChesney conceded that he had pled guilty to armed robbery, accompanied by his counsel, but he said that if Mr. Stringer had advised him of his constitutional rights he did not fully understand the advice. He said he did not realize until he was incarcerated· in the Louisiana state penitentiary that he could not be paroled and that no one had told him that before. When asked about the judge's interrogation at the time of the guilty plea, he admitted that he understood that he was pleading guilty to the crime of armed robbery but he thought that upon good behavior he could serve less than the full sentence and be paroled. It appears from his testimony that his principal complaint was and is that he cannot be paroled from his conviction for armed robbery and that he was not told this before entering his plea. He did not maintain that he was innocent or that he was coerced in any way to enter his plea.[5]

In *Boykin, supra,* the Supreme Court invalidated a plea of guilty made under unusual circumstances. There the accused appeared with appointed counsel and pled guilty to five charges of armed robbery. "So far as the record shows, the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court." *Id.,* 395 U.S. at 239, 89 S.Ct. at 1710. Pursuant to the requirements of Alabama law, a jury was empaneled to fix the punishment and sentenced Boykin to die. The Court held that when a plea of guilty is entered in a state criminal trial a waiver of several· federal constitutional rights takes place, that these are the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. Accordingly, the Court said, "We cannot presume a waiver of these three important federal

A. Oh, yes. I told them that, of course, if they went to trial and were found guilty, that they . . . At the time, I think, I probably had the Statutes with me and I told them exactly what the offense called for, what the maximum that could be . . .

\* \* \* \* \*

A. I explained to him at that time, of course, that the case was one that would have to be tried by a jury. It would be necessary for a jury to find him guilty. And that we would be allowed to go ahead and present our . . . present what evidence we had to the jury. And that regardless of what the District Attorney had, we would still have the right to present any evidence that we could come up with to the jury and it would be up to them to make the final decision. And it would also be up to him to go ahead and decide whether he wanted to go ahead and be tried by a jury or whether he wanted to enter a plea—exactly what he wanted to do. All I could do was advise him of his rights, make investigation from what facts he gave me, and then either go ahead and try the case or attempt to enter a plea and find out what sentence would be imposed by the Court.

\* \* \* \* \*

A. . . . I had spoken to the District Attorney and with the Court and received the amount of the sentence and told him the amount of sentence he would receive if he entered a plea.

\* \* \* \* \*

Q. You heard him say that you didn't advise him of no possibility of parole. Is that correct?
A. Yes. I did hear that.
Q. Did you advise him of that fact?
A. Yes. I feel certain I did because we attempted to get a lesser sentence . . . ah, a lesser plea for Mr. McChesney. The Court was unable . . . The Court was unwilling to go along with that.
Q. Earlier, when you were up here, you said, I believe you said, you read him the Statutes with the amount of time he could get?
A. Yes.

\* \* \* \* \*

5. McChesney related his prior criminal record on cross-examination at the post-conviction evidentiary hearing in the state court. He said that he had appeared in a court of law in California for possession of stolen goods; also for forgery or uttering worthless checks which he said were misdemeanors and that in those matters he was either allowed to plead to a lesser charge, a misdemeanor, or make restitution. He did not elaborate further.

rights from a silent record." *Id.,* 395 U.S. at 243, 89 S.Ct. at 1712. "[T]he utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence," is required, said the Court. *Id.,* 395 U.S. at 243–244, 89 S.Ct. at 1712.

■ However, no rule of criminal procedure was mandated by *Boykin,* and there is no express requirement that specific articulation of the three constitutional rights above mentioned be given to the accused at the time of the acceptance of a plea of guilty, but it is necessary that the record show that the guilty plea was intelligently and voluntarily made. Supreme Court decisions after *Boykin* make this clear. For example, in Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), decided shortly after *Boykin,* the Supreme Court upheld Brady's plea of guilty as having been voluntarily and intelligently made. The record at the time of entry of the plea showed that the trial judge twice questioned the defendant as to the voluntariness of his plea, and the colloquy between the court and the accused was directed to the issue of the voluntariness of his plea of guilty. The court asked the defendant the following (397 U.S. at 743 n. 2, 90 S.Ct. at 1466):

"You understand that in doing that you are admitting and confessing the truth of the charge contained in the indictment and that you enter a plea of guilty voluntarily, without persuasion, coercion of any kind? Is that right?"

The defendant responded, "Yes, your Honor." The court twice again inquired if the accused persisted in the plea of guilty and received affirmative replies. In the post-conviction hearing the district court found that there was no impermissible pressure by petitioner's counsel on the defendant, and that the plea was voluntarily and knowingly made by the accused. The Supreme Court affirmed on the basis that the guilty pleas were both "voluntary" and "intelligent," citing *Boykin.* Nowhere in *Brady* was anything said by the Court to indicate that specific articulation of the three constitutional rights set forth in *Boykin* was required when the plea was entered, the Court stating in footnote 4 (397 U.S. at 747, 90 S.Ct. at 1468) that "[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." [6] To the same effect as

6. In *Brady,* Mr. Justice White elaborated on the mutuality of advantage to the state and the accused of pleas of guilty. He said in his opinion (397 U.S. at 751–753, 90 S.Ct. at 1471):
"The issue we deal with is inherent in the criminal law and its administration because guilty pleas are not constitutionally forbidden, because the criminal law characteristically extends to judge or jury a range of choice in setting the sentence in individual cases, and because both the State and the defendant often find it advantageous to preclude the possibility of the maximum penalty authorized by law. For a defendant who sees slight possibility of acquittal, the advantages of pleading guilty and limiting the probable penalty are obvious—his exposure is reduced, the correctional processes can begin immediately, and the practical burdens of a

trial are eliminated. For the State there are also advantages—the more promptly imposed punishment after an admission of guilt may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved for those cases in which there is a substantial issue of the defendant's guilt or in which there is substantial doubt that the State can sustain its burden of proof. It is this mutuality of advantage that perhaps explains the fact that at present well over three-fourths of the criminal convictions in this country rest on pleas of guilty, a great many of them no doubt motivated at least in part by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial to judge or jury.

the holding in Brady, see Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), decided the same day.

In North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), decided the year after Boykin, the Supreme Court said in determining the validity of guilty pleas that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. See Boykin v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711, 23 L.Ed.2d 274 (1969); . . . ." Id., 400 U.S. at 31, 91 S.Ct. at 164. The Supreme Court declined to vacate Alford's guilty plea because the record in the post-conviction state court hearing "confirmed that Alford had been fully informed by his attorney as to his rights on a plea of not guilty and as to the consequences of a plea of guilty. Since the record in this case affirma-

tively indicates that Alford was aware of the consequences of his plea of guilty and of the rights waived by the plea, no issues of substance under Boykin v. Alabama (citation omitted), would be presented even if that case was held applicable to the events here in question." Id., 400 U.S. at 29 n. 3, 91 S.Ct. at 163. We note that the Court's decision was predicated on evidence received at the post-conviction hearing. As in Brady and Parker, there is no indication that any express enumeration of the three constitutional rights referred to in Boykin was required to be made at the time of the acceptance of Alford's plea.[7]

■■ We have held in several cases since Boykin that evidence in post-conviction habeas proceedings may be considered which shows that a guilty plea was intelligently and voluntarily made at the time with awareness of its consequences. Our most recent decision in LeBlanc v. Henderson, 5 Cir., 1973, 478 F.2d 481

"Of course, that the prevalence of guilty pleas is explainable does not necessarily validate those pleas or the system which produces them. But we cannot hold that it is unconstitutional for the State to extend a benefit to a defendant who in turn extends a substantial benefit to the State and who demonstrates by his plea that he is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary."

7. The most recent decision by the Supreme Court concerning the voluntariness of guilty pleas is Fontaine v. United States, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed. 2d 169 (1973). In Fontaine petitioner was arraigned on November 13, 1969, more than five months after the Supreme Court's decision in Boykin. Fontaine pled guilty after executing a written waiver of his right to counsel and to a grand jury indictment. The trial judge, before accepting the plea, addressed him personally. Petitioner acknowledged that his plea was given voluntarily and knowingly, that he understood the nature of the charge and consequences of the plea, and that he was in fact guilty. The judge then accepted the guilty plea. Peti-

tioner later filed a motion under 28 U.S.C. § 2255 to vacate his sentence on the grounds that his plea of guilty had been induced by a combination of fear, coercive police tactics, and illness, including mental illness. The district judge denied the motion without an evidentiary hearing and was affirmed by the Sixth Circuit Court of Appeals. The Supreme Court vacated and remanded by noting: "On this record, we cannot conclude with the assurance required by the statutory standard 'conclusively show' that under no circumstances could the petitioner establish facts warranting relief under § 2255; accordingly, we vacate the judgment of the Court of Appeals and remand to that court to the end that the petitioner be afforded a hearing on his petition in the District Court."

Although the Court did not expressly state that Boykin requires the trial judge to enunciate all three rights relating to jury trial, confrontation, and self-incrimination in order for the guilty plea to be valid, the facts and result in Fontaine certainly have that effect. After all, if Boykin meant what the district court said in the present case, the Supreme Court would have allowed Fontaine to replead without the need for an evidentiary hearing. The plea in Fontaine would have been per se invalid.

(Brown, C. J.), involved the habeas corpus petition of a defendant who, like McChesney, was accused of armed robbery in Louisiana and, pursuant to a plea bargain, entered a plea of guilty and was sentenced to a term of six years in the state penitentiary. LeBlanc contended that his plea of guilty was not voluntarily and knowingly made. The minute entry of the state court proceedings showed only that the accused, LeBlanc, had appeared before the court with his attorney, had withdrawn his former plea of not guilty, and entered a plea of guilty as charged whereupon he was sentenced to imprisonment in the Louisiana state penitentiary for a period of six years. We held that " . . . under the circumstances of this case, *we agree with its* [i. e., the lower court's] *acceptance of evidence obtained in a post-conviction hearing as curative of the otherwise defective trial transcript . . . .*" (Emphasis supplied.) *Id.* at 483. We also considered LeBlanc's contention that he was unaware of his ineligibility for parole for this offense, and held that the trial judge was not required to inform a defendant of his ineligibility for parole, citing Onick v. United States, 5 Cir., 1970, 425 F.2d 1292, cert. denied, 400 U.S. 846, 91 S.Ct. 92, 27 L.Ed.2d 83 (1970); Sanchez v. United States, 5 Cir., 1969, 417 F.2d 494; Trujillo v. United States, 5 Cir., 1967, 377 F.2d 266, cert. denied, 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967). Finally, we said that under *Boykin,* "[i]t is error, plain on the face of the record, for a trial judge to accept a guilty plea without an affirmative showing that it is intelligently and voluntarily made," and affirmed the district court's denial of the writ "because of the overwhelming showing in the state habeas hearing that the plea was in fact

knowingly made with awareness of its consequences in respect of those requirements having constitutional statute . . . . " *Id.* at 484.

Earlier in Oaks v. Wainwright, 5 Cir., 1971, 445 F.2d 1062 (Brown, C. J.), a habeas case from a Florida state conviction, we took cognizance of the holding in *Boykin* and *on the basis of the record made in the state habeas post-conviction hearing* concluded:

"Under these circumstances, after being advised of his right to a jury trial and of the maximum sentence which could be imposed, Oaks pleaded guilty to a reduced charge of second degree murder. All the facts point to a knowing and voluntary plea induced by the defendant's knowledge of strong evidence corroborating his guilt and by his desire to trade the certainty of prison for the possibility of a death sentence. Such a plea is not constitutionally infirm. North Carolina v. Alford, *supra*; Parker v. North Carolina, 1970, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785; Brady v. United States, 1970, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747."

*Id.* at 1064.[8]

Nobles v. Beto, 5 Cir., 1971, 439 F.2d 1001 .(P.C., Gewin, Goldberg and Dyer, Circuit Judges), involved a Texas state prisoner applying for habeas corpus growing out of his plea of guilty to robbery by assault. In that case a state trial court conducted a full evidentiary hearing on the merits of the allegations in the prisoner's habeas petition. We held that *the record of the state court habeas proceedings fully supported that court's findings and conclusions* and that our independent review of the state habeas transcript clearly disclosed no error

---

8. Chief Judge Brown, writing for the panel, said in *Oaks* that "*Boykin* imparts a unique twist to this rule by requiring affirmative evidence in the record to establish an intelligent and voluntary plea, thereby rejecting as insufficient the mere lack of evidence that the plea was involuntary or coerced. 'It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary.' 395 U.S. at 242, 89 S.Ct. at 1711, 23 L.Ed.2d at 279." *Id.*, 445 F.2d at 1063.

in the district court's ruling. Finally, we said:

"The appellant's second contention is that the trial judge's failure to determine the voluntariness of his plea in a recorded proceeding renders the conviction invalid under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1968). We do not agree with this argument. Even if *Boykin* were to be held to have retroactive effect, it is inapplicable in this case *because the state post-conviction hearing resulted in a valid conclusion that the guilty plea was in fact voluntarily and intelligently made.* Dennis v. Henderson, 435 F.2d 1288 (5th Cir. 1970)."

(Emphasis supplied.) *Id.* at 1002.

In Dulin v. Henderson, 5 Cir., 1971, 448 F.2d 1238 (P.C., Gewin, Goldberg and Dyer, Circuit Judges), we held, pursuant to Boykin v. Alabama, *supra,* that the record lacked "sufficient indication that the appellant was either advised or aware of his rights" and that the state trial court had not taken steps "to insure a record which would undisputably show that Dulin's guilty plea was intelligently and voluntarily entered." We remanded the case "for an additional hearing at which appellant should be assisted by counsel, and at which the state should be given the opportunity to come forth with any positive evidence it may have to controvert appellant's allegations." *Id.* at 1240.

It is abundantly clear, therefore, from numerous prior holdings of this Court that in a state habeas corpus case when determination is being made whether an accused's guilty plea was intelligently and voluntarily entered, consideration should be given not only to the record of proceedings at the time of acceptance of the plea, but also to evidence obtained in a post-conviction hearing. The contrary ruling of the district court is erroneous.

In none of the Fifth Circuit cases referred to, *LeBlanc, Oaks, Nobles* or *Dulin,* was there mention of a *Boykin* requirement that there be express waiver of certain specified constitutional rights. Were we to impose a rule of criminal procedure requiring express articulation and waiver of certain constitutional rights at the time of acceptance of guilty pleas, we would require more of the state courts than is required in the federal courts. The federal courts are, of course, governed by Rule 11 of the Federal Rules of Criminal Procedure [9] which requires that the plea may not be accepted by the court without "determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." In McCarthy v. United States, 394 U.S. 459, 467 n. 20, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969), the Supreme Court said, "The nature of the inquiry required by Rule 11 must necessarily vary from case to case, and, therefore, we do not establish any general guidelines other than those expressed in the Rule itself." Thus there is no requirement that the court "conform to any litany." United States v. Tabory, 4 Cir., 1972, 462 F.2d 352, 353.

In United States v. Frontero, 5 Cir., 1971, 452 F.2d 406, 415, this Court was confronted with the contention by the defendant that express waiver of specific constitutional rights by a defendant was necessary on acceptance of his guilty plea. Judge Wisdom writing for the

---

9. Rule 11, Fed.R.Crim.P., reads as follows:
   "A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

**1110**

Court ruled adversely to this contention and said:

"This Court is, however, aware of no precedent, from the Supreme Court or elsewhere, for the proposition that due process requires that a defendant be informed of each and every right which is waived by a guilty plea or that the waiver of these rights is a 'consequence', within the meaning of Rule 11, of which a defendant must be personally informed before a guilty plea may be accepted. Carrying Kelly's argument to its logical conclusion, the court, before accepting a guilty plea, would be required to inform a defendant of his right to a speedy and public trial, his right to an impartial jury, his right to compulsory process for obtaining witnesses, his right to be free from cruel and unusual punishment, his right to be free from unreasonable searches and seizures, his right to have excluded from the trial any evidence illegally seized, and many more. We do not read Rule 11 as requiring this; nor do we feel that due process requires this. Kelly relies heavily, in fact solely, on Boykin v. Alabama, 1969, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, as authority for this contention. This reliance is misplaced. *Boykin* involved a silent record, where there was absolutely no showing that the guilty plea was intelligently and voluntarily entered. The record in the case at bar reveals affirmative awareness of the 'consequences' of a guilty plea."

The Fourth Circuit was presented with a similar contention in Wade v. Coiner, 1972, 468 F.2d 1059, 1060, a state habeas corpus case, and Judge Craven writing for the court held, " . . . we reject the contention that under either the Constitution or Rule 11,

if applicable to the states, and we think it is not, Wade was entitled to specific monition as to the several constitutional rights waived by entry of the plea." Judge Craven then went on to say the following:

"Despite the dissenting statement of Mr. Justice Harlan, joined in by Mr. Justice Black, we do not find in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), a rule fastening the 'rigid prophylactic requirements of Rule 11' of the Federal Rules of Criminal Procedure upon the states. As a matter of expediency and circumspection, state judges may choose to engage in the colloquy mandated for their federal colleagues by Rule 11, but there is nothing in *Boykin* that requires them to do so. The exhortation to state judges to exercise the utmost solicitude 'in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence' is silent as to the method of discharging that function. If the record affirmatively shows that the plea was intelligently and voluntarily entered, that is enough. The substance of the inquiry will, of course, be analogous to a Rule 11 colloquy. Smith v. Cox, 435 F.2d 453, 457 (4th Cir. 1970)."

We hold, therefore, that there is no requirement that there be express articulation and waiver of the three constitutional rights referred to in *Boykin*, by the defendant at the time of acceptance of his guilty plea, if it appears from the record that the accused's plea was intelligently and voluntarily made, with knowledge of its consequences. The contrary ruling of the district court is erroneous.[10]

---

10. The district court said its view was held in other circuits as well, citing United States ex rel. Sadler v. Pennsylvania, 3 Cir., 1970, 434 F.2d 997; Korenfeld v. United States, 2 Cir., 1971, 451 F.2d 770; Smith v. Cox, 4 Cir., 1970, 435 F.2d 453. Sadler involved a pre-*Boykin* plea. Referring to *Boykin* in dicta, however, the

Third Circuit said only that a plea should be invalidated if the record is silent on the issue of voluntariness.

In *Korenfeld*, Judge Lumbard of the Second Circuit noted that "[Boykin] in no way intimated the precise terms of the inquiry that the trial judge should make of a defendant before accepting his plea,"

McChesney, of course, did not have to plead guilty, and was advised by counsel that he had the alternative of pleading not guilty and being tried before a jury, that the district attorney would have to produce witnesses against him (here an eyewitness and arresting officers who apprehended him in possession of property). He made a choice between the alternative of a sure six-year sentence (one year more than the minimum term for this offense) which his counsel had bargained for with the prosecutor, as against a possible sentence of up to ninety-nine years. When he freely elected to plead guilty, he thereby confessed his guilt and incriminated himself. Obviously there would be no trial or confrontation of witnesses for the plea bargain dispensed with a trial. His counsel, Mr. Stringer, gave a satisfactory account of his services and advice to the defendant. It is difficult to see how he could have done more. It must not be forgotten in considering all of the circumstances of this case that what transpired was in pursuance of a plea bargain, freely made, with obvious advantage to McChesney.

▇ We hold, therefore, that in deciding the voluntariness of McChesney's guilty plea consideration must be given to the record of proceedings not only which transpired when the plea was accepted, but also in the post-conviction state evidentiary hearing; that a reasonable reading of the record supports a finding that the defendant was advised of his ineligibility for parole for the offense of armed robbery prior to acceptance of his plea; and that in any event the defendant was not entitled as a matter of law to be informed of ineligibility for parole. Finally, we hold that express articulation and waiver of the three constitutional rights referred to in *Boykin* by the defendant at the time of acceptance of his plea is not required, since it appears from the record that McChesney entered the plea intelligently and voluntarily with knowledge of its consequences.

Reversed.

---

451 F.2d at 773, and the case did not establish that the defendant must be specifically advised of his constitutional rights relating to jury trial, confrontation, and self-incrimination.

*Smith*, a Fourth Circuit case, involved another pre-*Boykin* plea which the court considered properly accepted by the district judge. Whatever the court said about *Boykin* was obvious dicta since that circuit subsequently held prior to the district court's decision here, that *Boykin* does not require the trial judge's discussion with the defendant to conform to any litany of constitutional rights. United States v. Tabory, 4 Cir., 1972, 462 F.2d 352, 353. *See also* Wade v. Coiner, 4 Cir., 1972, 468 F.2d 1059.