Ronald NEYLAND,
Petitioner-Appellant,

v.

Frank BLACKBURN, Warden, Louisiana State Penitentiary, William J. Guste, Jr., Attorney General, State of Louisiana, Respondents-Appellees.

No. 84–3491.

United States Court of Appeals, Fifth Circuit.

March 31, 1986.
Rehearing Denied April 23, 1986.

Lila Tritico Hogan, Hammond, La. (Court-appointed), for petitioner-appellant.

Ronald Neyland, pro se.

Michael E. McMahon, Susan Scott Hunt, Asst. Dist. Attys., E. Sue Bernie, New Orleans, La., for respondents-appellees.

Before GARWOOD, HIGGINBOTHAM, and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner Neyland appeals the district court's denial of his habeas corpus petition under 28 U.S.C. § 2254 challenging his Louisiana conviction, pursuant to his plea of guilty, of armed robbery and the related enhancement of his sentence under the Louisiana multiple offender statute. Neyland claims his plea of guilty was constitutionally invalid because the state trial court did not specifically inform him of his rights to a jury trial or against compulsory self-incrimination. He attacks his sentence enhancement primarily by asserting that his counsel's admissions made in that regard were the functional equivalent of a plea of guilty and were not accompanied by the admonitions required by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). We reject petitioner's contentions, and affirm the denial of habeas relief.

### Facts and Proceedings Below

Petitioner Ronald Neyland, represented by counsel, pleaded guilty to three counts of armed robbery in Louisiana state court

on August 4, 1977. Neyland had previously pleaded not guilty, and it is evident that his plea of guilty was pursuant to a plea bargain, as the judge recognized.[1] Before accepting the guilty plea, the judge informed Neyland that he had a right to trial and that at trial he had the right to call witnesses on his own behalf and to confront and cross-examine any witnesses called by the State. The judge told petitioner that by entering the guilty plea he waived his right to trial and his right to appeal to a higher court if he had been found guilty at his trial. The judge stated that the maximum sentence petitioner could receive was ninety-nine years and the minimum was five years on each count, and that any sentence would be without the benefit of probation, parole, or suspension of sentence.

The judge explained the charges to Neyland and asked him if he understood them, to which petitioner replied that he did. The judge also asked petitioner if he had been coerced or threatened into pleading guilty. Petitioner replied in the negative.

The judge then told petitioner that if he accepted petitioner's guilty plea, he would sentence petitioner to twenty-five years on each count, the sentences to run concurrently. In addition, the judge told Neyland that if the State charged petitioner as a multiple offender, "as you probably will be by the state," he would sentence Neyland to thirty-three and a third years on each

count, each to be concurrent and with credit for time served.[2]

The judge then asked petitioner if he was pleading guilty "because you are in fact guilty," to which petitioner replied affirmatively. In response to the court's inquiry, Neyland also stated that apart from the sentence as discussed by the judge he had not been promised anything to induce him to plead guilty. The judge then ascertained that Neyland was satisfied with his counsel. The judge showed Neyland the guilty plea form bearing his signature and asked Neyland if he had signed it, and Neyland stated that he had.[3] The judge then ascertained that Neyland understood the form. The judge thereupon accepted the guilty plea and sentenced petitioner to twenty-five years on each count, with the sentences to run concurrently. The State announced it would file a "multiple bill." The court then stated, "The matter is set down for hearing on the Multiple Bill on August 10. Mr. Neyland, you'll be returned to Court.... Do you understand everything, Mr. Neyland?", to which Neyland replied, "Yes, Sir." The hearing then concluded.

On August 10, 1977, the State filed a multiple bill against petitioner based on a 1974 forgery charge in Texas to which petitioner had pleaded guilty. A hearing on the multiple bill, though initially set for August 10, was held August 26, 1977. Apparently there is no transcript of that hearing available.[4] The minute entry shows

---

1. See notes 3 and 5, infra.

2. Under the Louisiana Habitual Offender Law, imprisonment for the second felony (if otherwise punishable by imprisonment for less than life) "shall be for a determinate term not less than one-third the longest term and not more than twice the longest term for a first conviction." La.Rev.Stat.Ann. § 15:529.1.A.(1) (West 1981). Since the maximum sentence for armed robbery is ninety-nine years, La.Rev.Stat.Ann. § 14:64 (West 1974), the habitual offender statute required the judge to assess a minimum sentence of thirty-three years; the maximum would be 198 years.

3. In the possible sentence blank in the form there is the following handwritten statement, with Neyland's initials beside it:

"99 yrs. at hard labor and if multiple billed 198 yrs. at hard labor on each of the 3 counts."

The form acknowledges that Neyland's attorney engaged in plea bargaining on his behalf with his permission, and that he was satisfied with his attorney. It reflects that he is charged with armed robbery, that the plea waives the right to trial and appeal, and that the accused understands the charges and is pleading guilty voluntarily because he is guilty and not because of threats and intimidation or promises. It is signed by Neyland, his attorney, and the judge.

4. There is a reference in the record to a transcript of the hearing; however, the State has informed this Court that the court reporter can find no notes from the hearing.

that petitioner, "through his counsel, admitted the allegations contained in the multiple bill." The minute entry also shows that the court found petitioner to be a multiple offender, vacated the original sentence, and sentenced petitioner to thirty-three years at hard labor on each count, with the sentences to run concurrently and with credit for time served.

Petitioner filed a habeas petition with the Criminal District Court, Orleans Parish, on July 28, 1982. The criminal district court denied the petition without an evidentiary hearing on August 24, 1982. Petitioner then filed a habeas petition with the Louisiana Supreme Court, which denied the petition without hearing or opinion on June 3, 1983. After rejection by the Louisiana courts, petitioner filed the present petition for writ of habeas corpus with the United States District Court for the Eastern District of Louisiana. The district court, after examining the State record and the pleadings of the parties in the present proceeding, entered an order and reasons rejecting Neyland's claims and dismissed the petition. This appeal followed.

**Discussion**

Neyland claims that he is entitled to habeas relief based on constitutional violations at the guilty plea hearing and at the multiple offender hearing. He alleges that his guilty plea was not voluntary because the requirements of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), were not met and that the multiple offender proceeding was constitutionally flawed because his acquiescence in the proceeding was neither intelligent nor voluntary. Petitioner also asserts that the trial court erred in the multiple offender proceeding by failing to affirmatively determine if the prior Texas conviction would have been a felony in Louisiana and if the prior Texas guilty plea was intelligently and voluntarily given.

*I. Guilty Plea*

▪ The United States Supreme Court has held that a guilty plea involves the waiver of several federal constitutional rights including the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers. *Boykin v. Alabama*, 89 S.Ct. at 1712. Because the guilty plea involves a waiver of constitutional rights, entry of the plea must be intelligent and voluntary. *Id.; Brown v. Jernigan*, 622 F.2d 914, 915 (5th Cir.), *cert. denied*, 449 U.S. 958, 101 S.Ct. 368, 66 L.Ed.2d 224 (1980). This Circuit has repeatedly held that a specific express articulation and waiver of the three rights mentioned in *Boykin* is *not* mandated, but that it is necessary for the record to show that the plea was voluntarily and intelligently given. *Brown, supra*, at 915; *Van Poyck v. Wainwright*, 595 F.2d 1083, 1085–86 (5th Cir.1979); *McChesney v. Henderson*, 482 F.2d 1101, 1106 (5th Cir.1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974); *United States v. Frontero*, 452 F.2d 406, 415 (5th Cir.1971). *See also Barksdale v. Blackburn*, 670 F.2d 22 (5th Cir.1982).

▪ The record in the August 4, 1977 guilty plea hearing affirmatively shows that petitioner's plea was knowing and voluntary. He was represented by counsel and was satisfied with the representation. The guilty plea form signed by petitioner and initialed after each statement, and likewise signed by his counsel, indicates that petitioner understood that he was waiving his rights to trial and appeal, that he had not been forced or intimidated into making the plea, and the maximum possible sentence. In the plea colloquy, the trial judge explained what was specifically charged in each of the three counts and told petitioner that on each of the three counts to which he was pleading guilty he had a right to trial, to call witnesses on his behalf, and to cross-examine the State's witnesses, and that by pleading guilty he waived those rights. In addition, the judge informed petitioner that he waived his right to appeal by pleading guilty. He further informed petitioner of the minimum and maximum possible sentences, and the fact that any sentence would be without the benefit of parole, probation, or suspension of sentence, and the actual sentence he would receive if he pleaded guilty. The court

asked petitioner if he was coerced or offered anything for making this plea. The court repeatedly asked petitioner if he understood the rights waived and the consequences of the guilty plea.[5] Petitioner repeatedly indicated that he understood the consequences of the plea and that it was voluntary. There is nothing to indicate that the showing in the colloquy that the plea was voluntary is incorrect. In these circumstances, the plea is not rendered constitutionally infirm by reason of the failure of the record to expressly reflect the word "jury" and to expressly refer to the privilege against self-incrimination. In *McChesney v. Henderson*, 482 F.2d 1101, 1109 (5th Cir.1973), we stated: "[W]ere we to impose a rule of criminal procedure requiring express articulation and waiver of certain constitutional rights at the time of acceptance of guilty pleas, we would require more of the state courts than is required in the federal courts."[6]

 Petitioner claims that because the Louisiana courts have held that the three

---

**5.** The pertinent part of the plea colloquy, following the court's explanation of the charges and Neyland's acknowledgement that he understood, is as follows:

"THE COURT: Do you understand, Mr. Neyland that you are pleading guilty to three separate counts of armed robbery?

"MR. NEYLAND: Yes, Sir; I do.

"THE COURT: Now, Mr. Neyland, as to each of these counts, you are entitled to a trial. You would have a right to call witnesses on your own behalf and you would have a right to confront and to cross examine any witnesses that would be presented against you by the State. But by entering this Guilty Plea, you give up your right to trial on all three counts. Do you understand that?

"MR. NEYLAND: I understand that, Sir.

"THE COURT: Also; if you went to trial on any one or all three of these counts, and you were found guilty on any one, or all three of these counts, you would have appeal rights—you could take your case to a higher court for review. But by entering this guilty plea, you give up your appeal rights. Do you understand that?

"MR. NEYLAND: Yes, Sir.

"THE COURT: Further; the maximum sentence that can be imposed in this case is up to ninety-nine years on each one of these three counts. You understand that?

"MR. NEYLAND: Yes, Sir.

"THE COURT: And the minimum sentence on each one of these counts is five years. Do you understand that?

"MR. NEYLAND: Yes, Sir.

"THE COURT: And any sentence that is imposed by this Court, is without the benefit of probation, parole or suspension of sentence. Do you understand that?

"MR. NEYLAND: Yes, Sir.

"THE COURT: Now; has anyone forced you, threatened you or coerced you in any manner so that you would enter this Guilty Plea?

"MR. NEYLAND: No, Sir.

"THE COURT: *You understand* that *I have discussed this case with your attorney and* with a representative of *the State* of Louisiana, *and we have determined that* if you enter and I accept these guilty pleas, that *I will sentence you to twenty-five years* on the first count, second count and third count, all to run concurrently; *and that if you are multiple billed, as you probably will be by the State, charged as a multiple offender, I will sentence you on the first count to thirty-three and a third years, the second count to thirty-three and a third years, and the third count to thirty-three and a third years, with credit for time served, all to run concurrently; do you understand that?*

"MR. NEYLAND: *Yes, Sir.*

"THE COURT: Now; do you have any objection to that having been discussed and determined, as of this time?

"MR. NEYLAND: No, Sir.

"THE COURT: Now; are you pleading guilty to all three counts in this Bill of Information, because you are in fact guilty?

"MR. NEYLAND: Yes, Sir.

"THE COURT: Other than what we've just discussed, has anyone promised you anything or induced you in any manner so that you would enter this guilty plea?

"MR. NEYLAND: No, Sir.

"THE COURT: Are you satisfied with the handling of your cases by your attorney and the Court?

"MR. NEYLAND: Yes, Sir.

"THE COURT: Your lawyer has submitted to me this plea of guilty form; would you look at this please.

"(DEFENDANT DOING SO)

"THE COURT: Mr. Neyland, did you sign that?

"MR. NEYLAND: Yes, Sir, Your Honor, I did.

"THE COURT: And do you feel that you understand what you have signed?

"MR. NEYLAND: Yes, Sir, Your Honor, I do.

"THE COURT: Let the plea of guilty form be filed in the record. There is a basis in fact for this—for the guilty pleas to each of the three counts. And the pleas of guilty to each of the three counts are now accepted and recorded." (Emphasis added).

**6.** Insofar as federal cases are concerned, this statement of course does not address the re-

*Boykin* rights must be specifically articulated and waived, he was denied due process. The Louisiana Supreme Court has held that the three rights stated by the United States Supreme Court in *Boykin* must be specifically stated and waived. *State v. Nuccio,* 454 So.2d 93 (La.1984); *State v. Cressy,* 440 So.2d 141, 143 (La. 1983). However, any complaint of the failure of the Louisiana trial court which accepted Neyland's plea to comply with Louisiana's interpretation of *Boykin* is a matter for resolution only by the Louisiana courts. Neyland asserts that he raised the *Boykin* argument in his habeas petition to the Louisiana Supreme Court. That court denied his petition without opinion. While we do not know the reasoning of the court, we must assume that it determined that Neyland received due process under the Louisiana interpretation of *Boykin*. The question before this Court is not whether the Louisiana court correctly applied its own interpretation of the principle announced in *Boykin*; the question is whether petitioner received sufficient warning such that the entry of his guilty plea did not violate due process under the federal Constitution. *See LeBlanc v. Henderson,* 478 F.2d 481, 482–83 (5th Cir.1973) (challenge to "only adherence to state statutory procedures" for taking guilty pleas not cognizable in federal habeas). *Cf. Trussell v. Estelle,* 699 F.2d 256, 263 (5th Cir.1983); *Llamas-Almaguer v. Wainwright,* 666 F.2d 191, 193 (5th Cir.1982). This Court in a habeas proceeding can grant relief only if the custody of the petitioner is in violation of the United States Constitution or federal laws. 28 U.S.C. § 2254(a). In this case, no such showing has been made since the record clearly reflects that the guilty plea was knowingly, intelligently, and voluntarily made.

■ At oral argument, petitioner claimed an equal protection violation, asserting that the Louisiana Supreme Court would normally have granted the writ but that in this instance the court simply "missed it," likely due to case overload. There is no claim that any unjustifiable standard or classification formed the basis of the Louisiana Supreme Court's failure to grant habeas relief in Neyland's case. Plainly, no cognizable equal protection claim is stated. Petitioner's argument would automatically make every state law "violation" by any state official a violation of the federal equal protection clause (unless the state *always* violated its own law and *always* did so in the same way, in which case violation of law would seem a misnomer). That will not do. *See Stern v. Tarrant County Hospital District,* 778 F.2d 1052 (5th Cir.1985).

## II. Multiple Offender Hearing

Neyland alleges three aspects of the multiple offender hearing that he claims entitle him to habeas relief. First, he asserts that the trial court did not ascertain whether the admissions of his counsel at the multiple offender hearing were intelligently and voluntarily given, and that the procedure followed was not in compliance with the Louisiana habitual offender statute. Second, he complains the Louisiana trial court did not affirmatively determine whether the prior conviction in Texas was a felony under Louisiana law. Third, that the Louisiana trial court erred by not determining whether the Texas guilty plea was intelligently and voluntarily given.

### A. Admission of the prior felony

The multiple offender hearing was held twenty-two days after the guilty plea hearing. Petitioner was represented by the same counsel at the multiple offender hearing as at the guilty plea hearing. There is no transcript of the multiple bill hearing, so we do not know what rights petitioner was advised of in that proceeding. The minute entry states that petitioner, "through his counsel, admitted the allegations contained in the multiple bill" and that the court found petitioner to be a second time felony

quirements of Fed.R.Crim.P. 11(c) following the amendments to it in 1974. *See United States v.*

*Guichard,* 779 F.2d 1139 (5th Cir.1986).

offender, vacated the original sentence, and sentenced petitioner to thirty-three years.

Petitioner contends that because the multiple offender hearing resulted in an increased penalty, his counsel's admissions are the functional equivalent of a guilty plea such that under *Boykin* there must be an affirmative showing in the record that the defendant knowingly and intelligently admitted that he was the defendant in the previous felony. It is not claimed that counsel's admissions were unauthorized by petitioner, or that counsel was ineffective. Although this Circuit has never addressed the question of whether the admission of prior felonies in a recidivist hearing is the functional equivalent of a guilty plea, three other Circuits have addressed the issue. Petitioner points out that each of these Circuits has held that admissions at a recidivist hearing are the equivalent of the guilty plea. However, each of the cited decisions deal with situations that differ materially from petitioner's.

The Ninth Circuit in *Wright v. Craven*, 461 F.2d 1109 (9th Cir.1972), upheld a trial court's ruling that the defendant's admission of prior convictions used for a recidivist determination was the equivalent of a guilty plea because the defendant waived "a wide range of rights" and relieved the state of the burden of proving the constitutional validity of the alleged prior convictions. *Wright v. Craven*, 325 F.Supp. 1253 (N.D.Cal.1971). However, the defendant in *Wright* was not informed that he could be convicted as a recidivist or that the admission of the prior felonies would result in a mandatory life sentence. Neyland's situation is wholly different. His guilty plea form showed the maximum multiple offender sentence. He was expressly informed at his guilty plea hearing that the State could and would probably multiple bill him and, if the State did so, the judge would sentence him to thirty-three and a third years on each of the three armed robbery counts. It is evident that this was contemplated by the plea bargain. Indeed, before the conclusion of the guilty plea hearing, the multiple bill hearing was set, with Neyland plainly understanding what was involved.[7]

The Eighth Circuit applied the *Wright* reasoning in *Cox v. Hutto*, 589 F.2d 394 (8th Cir.1979). In *Cox*, the petitioner's counsel stipulated to four prior convictions, thus relieving the state of the necessity of presenting evidence of the convictions. Cox later testified that he did not know that his counsel would make such a stipulation and did not consent to it. The stipulation was the only evidence of the prior convictions *offered* at the state trial. The Eighth Circuit reasoned that *if* the defective stipulation was the only evidence of prior convictions the state then had *available*, the petitioner would be entitled to relief. *Id.* at 396–97. The court would grant habeas only if the state failed to establish on remand that it possessed evidence at the time of Cox's trial of three prior felony convictions.[8] In *Cox*, the only relevant matter in the state record before the Eighth Circuit consisted of the docket entries which the Eighth Circuit assumed would have been offered and admitted in the state proceeding had the stipulation not been made. However, the Court concluded these were insufficient under Arkansas law to establish the validity of the prior convictions for purposes of the Arkansas multiple offender statute.[9] *Id.* Hence the remand.

---

7. In *Cancino v. Craven*, 467 F.2d 1243, 1247 (9th Cir.1972), the Ninth Circuit, remanding the district court's denial of habeas on several grounds, quoted its language in *Wright v. Craven, supra,* that a defendant's admission of prior convictions used for a recidivist determination "may not be accepted unless the defendant understands the consequences of the admission" and stated that the "district court, on remand, will have the opportunity to consider [habeas petitioner] Cancino's attack on his admission of the prior felony in the light of *Wright.*" We do

not consider *Cancino* to add anything to *Wright,* and *Cancino* is hence properly distinguished for the same reasons that *Wright* is.

8. Although Cox's counsel had stipulated to four prior felonies, only three were required to support the enhanced sentence.

9. The Eighth Circuit noted that Arkansas requires the state to establish that the defendant either received effective assistance of counsel or validly waived such counsel in the previous con-

■ In the case at bar, however, the State had adequate *prima facie* proof under the Louisiana statute to establish the prior conviction. The record of the Louisiana proceedings reflects that on August 26, 1977 there was filed in the record a certified copy of the sentence and judgment of conviction of the Texas court which stated that the defendant was represented by counsel, had been informed of his rights, and had validly waived those rights.[10] The certificate appears to be in the form admissible for this purpose and constituting *prima facie* proof of the validity of the convictions under Louisiana law. *See* La.Rev. Stat.Ann. § 15:529.1.F; *State v. Bernard,* 366 So.2d 1294, 1296–97 (La.1978). It is not contended otherwise. Further, in the present case, unlike *Cox,* no contention has been made that counsel's admission was not authorized and anticipated by petitioner.

■ The Third Circuit, in *Government of the Virgin Islands v. George,* 741 F.2d 643, 648–49 (3d Cir.1984), held that "before asking a defendant whether he has previously been convicted, a court conducting a hearing under the Virgin Islands habitual criminals statute must inquire into, and make a determination of, the defendant's understanding of the consequences of that admission." Because the defendant, before making his admission, had not been acquainted "with the essential nature of the habitual criminal proceeding and the penalties to which he stood exposed," the proceedings were held improper. *Id.* at 650. However, Neyland, unlike the defendant in *George,* was informed of the consequences of admitting to previous convictions prior to the admissions being made. While we do not know whether he was informed of the consequences at the recidivist hearing, the record clearly shows he was informed of the consequences when he signed the guilty plea and by the sentencing judge at the guilty plea hearing twenty-two days before the recidivist hearing. Moreover, *George* was a direct appeal, not a collateral attack.

Where admissions of prior convictions are made by counsel at a state multiple bill proceeding closely related, temporally and functionally, to a proper and counseled prior guilty plea, we believe that there is much to recommend an approach for purposes of federal habeas relief which resolves the validity of such admissions under an effective assistance of counsel analysis rather than under the standards ordinarily applicable to accepting guilty pleas. Here there is neither any claim nor anything in the record which suggests that Neyland's counsel rendered him less than effective assistance.

In any event, the totality of the circumstances here indicates that petitioner was aware of the consequences of his counsel's admission at the recidivist hearing and that his right to due process was not violated.

viction. *Klimas v. State,* 259 Ark. 301, 534 S.W.2d 202, 204 (Ark.), *cert. denied,* 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1976). Only one docket entry noted that the defendant waived counsel and thus satisfied the requirements. 589 F.2d at 396–97.

**10.** The printed portion of the Texas judgment states that Ronald Neyland appeared with counsel and waived his right to trial by jury. The form further states:

"The Defendant was admonished by the Court of the consequences of the said plea, and the Defendant persisted in entering said plea; and it plainly appearing to the Court that the Defendant was sane and that he was uninfluenced by any consideration of fear, or persuasion, or delusive hope of pardon prompting him to confess his guilt, the said plea was accepted by the Court and is here entered of record upon the minutes. The Defendant, having in open court ... waived the appearance, confrontation, or cross-examination of witnesses, consented to the stipulation of evidence and to the introduction of testimony by affidavits, written statements of witnesses, and any other documentary evidence and such waiver and consent having been approved by the Court in writing and filed in the papers of the cause, the plea of the Defendant was received and entered of record upon the minutes."

The certificate form also reflects that a photograph and fingerprints of Ronald Neyland are attached. While these are not contained in the copy of the state record which was furnished the district court below, it is not claimed that they were not filed.

The guilty plea form showed the maximum possible sentence if multiple billed. Petitioner was informed by the judge before accepting his guilty plea that there was a probability that the State would bill him under the multiple offender statute, and if that happened petitioner would receive a specific enhanced sentence. The State announced in open court at the August 4 hearing that it would file a multiple bill, and the judge, in open court, then set the multiple bill hearing for August 10, and the judge ascertained that Neyland understood. The recidivist hearing, which apparently was briefly delayed, was held only twenty-two days after the guilty plea hearing. Petitioner was represented by the same counsel at the recidivist hearing as at the guilty plea hearing. There is no indication that the counsel here was unaware of the effect of admitting prior felonies, as was the counsel in *Wright.* Neyland's attorney and Neyland both knew the consequences of the admissions to the multiple bill. That had been explained. Indeed, it seems evident that the guilty plea bargain contemplated a multiple bill, so that the effective sentence would be thirty-three years.[11]

 Petitioner also alleges that the trial court failed to comply with the requirements of La.Rev.Stat.Ann. § 15:529.1.D, which provides that:

"[T]he court in which the subsequent conviction was had shall cause the person, ... to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If the judge finds that he has been convicted of a prior felony or felonies, or if he acknowledges or confesses in open court, *after being duly cautioned as to his rights,* that he has been so convicted, the court shall sentence him to the punishment prescribed in this Section." (Emphasis added.)

The Louisiana courts have interpreted this provision to require the record to affirmatively show that the defendant was advised of his rights in open court. *State v. Vincent,* 439 So.2d 1124, 1126–27 (La.Ct.App. 1983). The court in *Vincent* held that a retrial is necessary if the record does not show the defendant was advised in open court, even if the defendant was represented by counsel who informed the judge, in defendant's presence, that he had consulted and advised the defendant of his rights. *Id.* There is no affirmative showing in the record that the court complied with the statute. However, in a habeas proceeding this Court can grant relief only if the person is in custody in violation of the federal Constitution or federal laws. *Trussell v. Estelle,* 699 F.2d 256 (5th Cir.1983). This Court is limited to determining whether petitioner's due process rights were violated such that the trial as a whole was fundamentally unfair. *Id.* We find that the multiple offender hearing was not fundamentally unfair for the reasons cited above.

### B. Failure to determine if prior conviction was felony under Louisiana law

 Petitioner complains that the Louisiana trial court erred because its minute entry does not show that the court specifically determined that the offense involved in the prior Texas conviction would have been a felony in Louisiana. The Louisiana Habitual Offender Law requires that the crime used to enhance the sentence be one which, if committed in Louisiana, would be a felony. La.Rev.Stat.Ann. § 15:529.1.A. Petitioner admits, however, that the crime to which he pleaded guilty in Texas would in fact have been a felony if committed in Louisiana. The above-mentioned record of the Texas conviction shows it was for forgery, was a felony, and resulted in a three-year penitentiary sentence. Forgery is a felony under Louisiana Law. La.Rev.Stat.Ann. §§ 14:2(4); 14:72. *See State v. Baxter,* 357 So.2d 271, 273 (La.1978). Since the forgery would in fact

---

11. We need not, and do not, determine what the result here would be if petitioner at the guilty plea hearing had been advised neither of the maximum sentence possible, nor of the sentence he would receive, if multiple billed.

have been a felony if committed in Louisiana, there is no basis on which to grant relief. A criminal defendant in a state court has no federal constitutional right to an error-free trial. *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir.1985); *Banks v. McGougan*, 717 F.2d 186, 190 (5th Cir. 1983). This Court can grant relief in a habeas proceeding if there has been a violation of the petitioner's rights such that the trial as a whole is "fundamentally unfair." *McAffee, supra; Banks, supra; Lane v. Jones*, 626 F.2d 1296 (5th Cir.1980), *cert. denied*, 450 U.S. 928, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981). Since petitioner in effect admits that, had the court made the determination of whether the prior offense was a felony,[12] the outcome of the recidivist hearing would be exactly the same, we cannot find any fundamental unfairness. The mere failure to adhere to state law procedural requirements does not suffice for federal habeas relief. *Trussell, supra*, at 262.

C. Constitutionality of prior Texas guilty plea

 Petitioner claims that because there was no evidence in the record that he waived his right against compulsory self-incrimination in the Texas proceeding, the Texas guilty plea is not shown to be constitutionally valid. However, the Texas judgment recites that: (1) defendant appeared in court with his counsel, (2) waived his right to trial by jury and his right to confrontation and cross-examination. This amounts to sufficient *prima facie* proof of its constitutionality. The Louisiana courts have held that when a foreign judgment of conviction indicated that the defendant was represented by counsel, that his plea of guilty was voluntary, and that the defendant was aware of its consequences, the conviction's constitutional validity was sufficiently shown. *State v. Bernard*, 366

So.2d 1294, 1299 (La.1978). The Texas judgment also gives *prima facie* proof that the federal requirements of *Boykin* are met.[13] Petitioner's claim in this connection is rejected.

### Conclusion

Petitioner's due process rights were protected in the guilty plea hearing since the court met the federal standard for due process under *Boykin*. Petitioner was not denied due process in the multiple offender hearing since he received adequate warnings in the shortly preceding guilty plea hearing, which anticipated the multiple bill proceeding, and was represented by the same counsel, whose effectiveness has not been challenged, at both.

The judgment of the District Court is affirmed.

AFFIRMED.

---

12. The judge likely made this determination, but since there is no transcript of the proceedings we cannot know for certain.

13. There is no allegation that the recitals in the Texas judgment are *in fact* false. There is no

allegation that the Texas counsel was ineffective. Nor, as previously noted, is there any allegation that Neyland's Louisiana counsel, who represented him at both his guilty plea and multiple bill hearings, was ineffective.